UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THERESA BAILEY,

                                        Plaintiff,

                    – against –

NEW YORK LAW SCHOOL, ANTHONY
CROWELL, DEBORAH ARCHER, HOWARD
MEYERS, JEFFERY BECHERER, and ERIKA
WOOD,

                                        Defendants.

**OPINION AND ORDER**

16 Civ. 4283 (ER)

---

Ramos, D.J.:

     *Pro se* plaintiff Theresa Bailey ("Plaintiff") brings this action against New York Law School ("NYLS" or the "School"), Anthony Crowell, Deborah Archer, Howard Meyers, Jeffery Becherer, and Erika Wood (collectively, "Defendants"), alleging, among other things, that Defendants failed to adequately discipline a classmate who assaulted her and then retaliated against her for reporting the attack in violation of Title IX and Section 1983. Before the Court is Defendants' motion to dismiss the Amended Complaint. For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED in part. Plaintiff will be given an opportunity to replead.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff is a 32-year-old woman of color and a United States Marine who attended NYLS as an evening student from August 2012 until her graduation in May 2016.  Am. Compl. (Doc. 17) ¶ 1.  The individual Defendants are all affiliated with the School:  Anthony Crowell is the School's Dean; Deborah Archer is the Dean of Diversity and Inclusion and Director of the Racial Justice Project; Howard Meyers is a professor and Associate Director for the Center for Business and Financial Law; Jeffery Becherer is an Associate Dean for Career Planning; and Erika Wood is a professor.  *Id.* ¶ 3.

Plaintiff's suit centers on an incident that occurred on the campus of NYLS on October 6, 2014.  That evening, Plaintiff left a class to use the restroom.  *Id.*, Ex. C at 1.  In the hallway, she encountered Stephen Nesbit, a 6-foot, 200-pound white student she had theretofore avoided based on observations of him with other women on campus.  *Id.* ¶ 4, Ex. C at 1 ("always too close, making physical contact without permission, interrupting their lives to make space for his agenda, staring for long periods, and ogling our bodies"), Ex. E at 2.  Nesbit allegedly trapped Plaintiff so that she could not pass, pushing her into a wall and sliding his body across hers.  *Id.*, Ex. E at 2–3.  Plaintiff was able to free herself, and when she turned to confront her attacker, she realized his pants were down and his butt and thighs were exposed.  *Id.* ¶ 4, Ex. E at 3.  According to Plaintiff, Nesbit was "clearly on drugs."  *Id.* ¶ 4.  "His eyes were red and glazed over, he was drooling, his chest was rising and falling, he was clenching and unclenching his fists, and his shoulders were rounded in an aggressive posture."  *Id.*, Ex. E at 3.  Nesbit began

---

[1] The following facts are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of the instant motion, as well as the documents attached to it and incorporated by reference.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011).

walking towards Plaintiff, and Plaintiff headed towards a stairwell. *Id.*, Ex. E at 3. There she encountered Paul Metcalf, another student. *Id.*, Ex. A at 2, Ex. E at 3. Plaintiff told Metcalf what had just occurred, and Metcalf walked her back to her class and then reported the incident to a School security officer.[2] *Id.*, Ex. E at 3.

The following day, Plaintiff reported the incident to Oral Hope, the School's Registrar Dean; Victoria Eastus, the School's Title IX coordinator; and Sally Harding, the School's Director of Student Life. *Id.* ¶ 4. Hope allegedly told Plaintiff that Nesbit was "no longer at NYLS." *Id.* ¶ 5. Days later, Eastus allegedly characterized Nesbit as "well-liked" and "good" and told Plaintiff that NYLS had no other complaints about him. *Id.* Plaintiff did not initially report the incident to the police, because of the fact that Nesbit had been removed from campus. *Id.*, Ex. C at 3.

On October 10, 2014, Defendant Meyers, serving as Chair of the School's Harassment and Discrimination Review Board ("Board"), convened an Investigation Panel ("Panel") to investigate the October 6, 2014 incident and record its findings and recommendations, pursuant to the School's Non-Discrimination and Harassment Policy ("Harassment Policy"). *Id.*, Ex. A at 1. The Panel consisted of Defendants Becherer and Wood. *Id.* Plaintiff was interviewed by the Panel on October 20, 2014, and she described feeling scared, unsafe, and vulnerable on campus as a result of the incident. *Id.*, Ex. A at 3. Plaintiff also alleges that as a result of the incident, she suffered panic attacks in the hallways of the School and had to leave class numerous times because of her emotional distress. *Id.*, Ex. C at 2, Ex. E at 3. Plaintiff talked to School Deans

---

[2] Plaintiff did not attempt to speak to a security officer because of a past experience she described. Am. Compl. ¶ 4. Namely, as Plaintiff reported in a NYLS survey in 2012, while she was speaking with another female student, she observed a security guard "stop[] in his tracks and turn[] 180 degrees to look at a third female student walking down the hall." *Id.*, Ex. C at 2. From that point on, Plaintiff did not feel safe interacting with security officers and made sure never to be on campus late at night. *Id.*

regarding her safety concerns, but she was dissatisfied with the way her concerns were addressed.  *Id.*, Ex. E at 3.

On October 23, 2014, after being assessed by a mental health professional, Nesbit was permitted to return to NYLS.  *Id.* ¶¶ 5, 8, Ex. C at 3.  According to Plaintiff, Nesbit told the mental health professional that he had not engaged in any other incidents at NYLS and that he had no history of alcohol abuse.  *Id.*, Ex. C at 3.  Based on the information Nesbit provided, the mental health professional determined that Nesbit was not a threat to himself or others.  *Id.* Upon learning that Nesbit was returning to campus, Plaintiff attempted to report the attack to the police.  *Id.* ¶ 5, Ex. C at 3.  The police allegedly told her that too much time had passed to arrest Nesbit or to obtain a temporary restraining order against him.  *Id.* ¶ 5, Ex. E at 3.

On October 26, 2014, Plaintiff emailed Defendants Crowell and Archer about the incident.[3]  *Id.* ¶ 6.  Crowell never responded, but the next day, Plaintiff met with Archer.  *Id.* ¶ 6, Ex. B at 2.  According to Plaintiff, Archer was "hostile" and suggested that Plaintiff had failed to report the incident to the appropriate employee.  *Id.* ¶ 6.  Plaintiff met with the Panel again on November 5, 2014 and again described feeling scared, unsafe, and vulnerable on campus.  *Id.*, Ex. A at 3.

Sometime thereafter, the Panel issued its findings and recommendations, which the Board adopted on November 25, 2014.  *Id.* ¶ 7, Ex. A.  The Panel's findings—which were based on a report from a security officer, security camera footage, interviews with Plaintiff, Nesbit, and Metcalf, and conversations with certain School administrators—largely tracked Plaintiff's allegations regarding what took place on October 6, 2014.  *Id.*, Ex. A at 2.  According to the

---

[3] Plaintiff's email was used by the School as her "formal written complaint" against Nesbit.  Am. Compl., Ex. A at 1, Ex. B at 2.

report, Nesbit did not deny any of Plaintiff's allegations regarding the attack.  *Id.*, Ex. A at 3.
Instead, he stated that he was under the influence of prescription medication that day and claimed
to have no memory of being on campus that night.  *Id.*, Ex. A at 3.

The report also detailed the Panel's findings regarding two other incidents involving
Nesbit.  One of the incidents occurred shortly after Plaintiff's encounter on the same evening.  A
female student was walking down a stairwell when she observed Nesbit sitting on the bottom
stair, talking to himself.  *Id.*  As the student walked past him, he looked up and made eye contact
with her, appearing upset and angry.  *Id.*  The student continued walking, and Nesbit began to
follow her.  *Id.*  When she sat down on a couch outside a classroom, Nesbit sat down on a couch
opposite hers.  *Id.*  He stared at her with bloodshot eyes for approximately one minute and
appeared to be trying to get her attention.  *Id.*  He attempted to put his hands in his jacket
pockets, but fumbled and was unable to do so.  *Id.*  The student was made uncomfortable by
Nesbit's stares, and she got up, walked to the security desk, and reported the incident.  *Id.*, Ex. A
at 3–4.  As with the incident involving Plaintiff, Nesbit did not deny any of these allegations, but
instead claimed to have no memory of being at the School that evening.  *Id.*, Ex. A at 4.

The other incident detailed in the report occurred a little over one month earlier.[4]  On
August 28, 2014, two female students separately reported to security that Nesbit approached
them in an unwelcomed manner at the School while he was inebriated.  *Id.*, Ex. A at 1.  Nesbit
approached the first student between 3:00 and 3:30 p.m., and he flirted with her and spoke about
being her friend.  *Id.*  Once he left, the student called security and reported the incident.  *Id.*
Shortly thereafter, Nesbit sat down near the second student and began speaking with her, telling

---

[4] Plaintiff alleges that if the School had told her that Nesbit had previously been reported for similar acts, she would
have filed a police report sooner.  Am. Compl., Ex. E at 3.

her that he was her friend and could help her.  *Id.*  The student told him to leave her alone.  *Id.*  Security officers observed Nesbit speaking to the second student, observed that he appeared drunk and smelled like alcohol, and escorted him off campus.  *Id.*  Nesbit admitted to the Panel that he was intoxicated on campus that day.  *Id.*

Based on the foregoing findings of fact, the Board concluded that Nesbit had violated Section I.B.2 of the Harassment Policy, which prohibited "subjecting an individual to humiliating, offensive, abusive or threatening conduct that creates an intimidating, hostile or abusive work, residential or academic environment, . . . or unreasonably interferes with an individual's academic . . . performance on the basis of the individual's Protected Classification." *Id.*, Ex. A at 1, 4.  The Board issued a number of sanctions against Nesbit, including: (1) prohibiting him from appearing on campus until January 11, 2015 and restricting his presence on campus thereafter to only his classes and co-curricular activities; (2) placing him on probation through his graduation at NYLS, meaning that any further Harassment Policy violation would result in his immediate expulsion; (3) permitting him to enroll only in classes that met between 9:00 a.m. and 5:40 p.m.; (4) preventing him from enrolling in any classes in which Plaintiff was enrolled; (5) requiring him to obtain approval of his schedule from the Assistant Dean for Academic Affairs; and (6) requiring him to attend a harassment training program.  *Id.*, Ex. A at 4–5.  Furthermore, following his graduation from NYLS, Nesbit would be permitted to appear on campus only to attend a bar review course, and upon completing the bar examination in July 2015, Nesbit would be prohibited from appearing on campus until Plaintiff graduated and completed her bar examination.  *Id.*, Ex. A at 5.

Dissatisfied with what she considered to be inadequate sanctions, Plaintiff appealed the Board's decision and requested a hearing, which was held in March or April 2015.  *Id.* ¶¶ 7, 8,

6

Ex. B at 2, Ex. E at 4.  Plaintiff noted in her appeal that Nesbit lied on his safety risk evaluation and that the hearing took place after an unreasonable delay.  *Id.* ¶ 8.  On April 9, 2015, Plaintiff received NYLS's final decision on the matter.  *Id.*, Ex. D.  Nesbit was not expelled, and he was able to graduate in 2015.  *Id.* ¶ 8, Ex. E at 1, 4.

In light of the way the School handled the matter, Plaintiff made the decision to transfer to another law school.  *Id.* ¶ 9, Ex. D.  In April 2015, she wrote to Defendant Crowell, as well as several professors at the School, seeking assistance.  *Id.*, Ex. C at 3–4, Ex. D.  Plaintiff also met with Crowell in June 2015, along with an individual from the Admissions Office who was supposed to aid her transfer.  *Id.* ¶ 6.  According to Plaintiff, her transfer application was returned unread because she was unable to obtain a letter of recommendation from a NYLS professor.  *Id.* ¶ 9, Ex. E at 1, 4.

Unable to transfer to another school, Plaintiff returned to NYLS for the fall 2015 semester.  *Id.*, Ex. E at 1.  That semester, Plaintiff received the worst grades of her law school career, including a D+ and an F.  *Id.* ¶ 10, Ex. E at 1, Ex. F at 2.  Plaintiff requested that the School investigate whether she received poor grades in retaliation for her complaints about Nesbit, specifically naming two NYLS professors, Barbara Graves-Pollar and David Schoenbrod.  *Id.* ¶ 11, Ex. E at 1.  Plaintiff is not aware of any investigation by the School into her claims.  *Id.* ¶ 11.

### B.  Procedural Background

On April 29, 2016, Plaintiff filed suit against Defendants in the Supreme Court of the State of New York, New York County, alleging a host of federal and state law claims.  Doc. 1, Ex. A.  On June 8, 2016, Defendants removed the case to this Court.  Doc. 1.  Defendants thereafter filed a letter, in accordance with this Court's Individual Practices, requesting a pre-

motion conference and leave to file a motion to dismiss the Complaint.  Doc. 14.  Plaintiff

responded to Defendants' letter, Doc. 16, and on June 30, 2016, a pre-motion conference was

held.  At the conference, the Court heard arguments regarding Defendants' proposed motion to

dismiss.  The Court granted Plaintiff leave to amend her Complaint, and Defendants were

granted leave to file a motion to dismiss the amended version of the pleading.

On July 5, 2016, Plaintiff filed her Amended Complaint.  Doc. 17.  Plaintiff alleges

federal claims under Title IX and Section 1983, as well as a number of claims under state law.

*Id.* at 4.  Plaintiff seeks $5 million in damages to cover, among other things, her paid tuition to

the School, lost wages, pain and suffering, and punitive damages.  *Id.*  On August 8, 2016,

Defendants filed their motion to dismiss the Amended Complaint.  Docs. 19–20.  Plaintiff filed

her opposition brief on September 1, 2016, Doc. 21, and on September 21, 2016, Defendants

filed their reply, Doc. 22.

## II.  LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw

all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014).  The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals

of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the

plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The same standard applies to motions to dismiss *pro se* complaints. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). The Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Id.*; *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* at 224 (quoting *Twombly*, 550 U.S. at 555). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## III. DISCUSSION

### A.  Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that Defendants violated her federal rights while acting "under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citing 42 U.S.C. § 1983). NYLS is a private educational institution and

the individual Defendants are employees of that private entity.  In evaluating whether such actors may be held liable under Section 1983, courts consider whether:  (a) the State compelled their conduct (the "compulsion test"); (b) there is a sufficiently close nexus between the State and their private conduct (the "close nexus test" or "joint action test"); or (c) their private conduct consisted of activity that has traditionally been the exclusive prerogative of the State (the "public function test").  *McGugan*, 752 F.3d at 229 (quoting *Hogan v. A.O. Fox Mem. Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009)).[5]  "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state," *McGugan*, 752 F.3d at 229 (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)), an inquiry that is "necessarily fact-bound," *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

Here, under any of the foregoing tests, the allegations in the Amended Complaint are insufficient to support a claim that Defendants were acting under color of state law.  In her brief, Plaintiff argues that the State "compelled" Defendants' conduct, because the School's federal funding could be terminated if it violated Title IX.  Pl.'s Opp'n Mem. (Doc. 21) at 8.  The receipt of public funds is not, however, "sufficient to transform the actions of a private entity into 'state action' for purposes of a lawsuit under § 1983."  *Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*, No. 16 Civ. 170 (GHW), 2016 WL 6127514, at *4 (S.D.N.Y. Oct. 20, 2016); *see also Dawkins v. Biondi Educ. Ctr.*, No. 13 Civ. 2366 (KMK), 2017 WL 325262, at *3–7 (S.D.N.Y. Jan. 20, 2017) (dismissing Section 1983 claims where the plaintiff failed to

---

[5] *Cf. Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003) ("We think it clear that a professor employed at a state university is a state actor.").

plausibly plead that a private high school and its employees were acting under color of state law).

Plaintiff also argues that Defendants "insert[ed] themselves into the police function," and that Defendants "obstructed [her] access to a police investigation" by "barring access to evidence that would have enabled police to conduct a separate investigation."  Pl.'s Opp'n Mem. at 8. Plaintiff's own allegations demonstrate that to be inaccurate, however, as she admits she could have reported the incident to the police at any time, choosing to delay doing so because her attacker had been removed from campus.  Am. Compl. ¶ 5, Ex. C at 3.

Plaintiff attempts to liken her case to *McGrath v. Dominican College of Blauvelt*, 672 F. Supp. 2d 477 (S.D.N.Y. 2009), wherein the district court found that a private college and its administrators acted under color of state law for Section 1983 purposes.  Pl.'s Opp'n Mem. at 8–9.  In *McGrath*, however, there was significant collaboration between the college and a state official.  Namely, the college delegated its responsibility to investigate the plaintiff's complaint of sexual assault to the police, through a police detective who was also an employee of the college.  672 F. Supp. 2d at 489–90.  Here, there is no allegation that the police or any other state official was entwined in any way in the School's handling of Plaintiff's complaints. Accordingly, Plaintiff's Section 1983 claims warrant dismissal.[6]

### B.  Title IX Claims

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of gender in educational programs and activities receiving federal financial assistance, providing, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be

---

[6] The Court need not decide whether Plaintiff's Section 1983 claims against Defendants Crowell and Archer should alternatively be dismissed for failure to plausibly allege that these individuals were personally involved in a constitutional deprivation.  *See* Defs.' Mem. (Doc. 20) at 9–10.

excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). It is well settled that an aggrieved individual has an implied right of action under Title IX for injunctive relief and monetary damages.  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009).  It is also clear that sexual harassment in the educational context—whether teacher-on-student or student-on-student—may constitute discrimination in violation of the statute. *Davis v. Monroe Cnty. Bd. of Edu.*, 526 U.S. 629, 649–50 (1999).

Plaintiff brings her Title IX claims against NYLS and the individual Defendants alike. However, the statute "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals," since they do not personally receive federal education funding.  *Fitzgerald*, 555 U.S. at 257; *see also Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06 Civ. 15509 (WWE), 2011 WL 1079944, at *5 (S.D.N.Y. Mar. 24, 2011) (dismissing Title IX claims against individual defendants).  Accordingly, Plaintiff's Title IX claims against the individual Defendants must be dismissed.

NYLS, on the other hand, as a Title IX funding recipient, may be held liable for student-on-student harassment, but only if the School was:  (1) deliberately indifferent; (2) to sexual harassment; (3) of which it had actual knowledge; (4) that was so severe, pervasive, and objectively offensive that it deprived the victim of access to the educational opportunities or benefits provided by the school.  *Davis*, 526 U.S. at 650.  In order to constitute deliberate indifference, the School's actions must be "clearly unreasonable in light of the known circumstances."  *Davis*, 526 U.S. at 648; *see also Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012) (same).  "[T]his is not a mere 'reasonableness' standard that transforms every school disciplinary decision into a jury question."  *Gant v. Wallingford Bd. of Edu.*, 195

F.3d 134, 141 (2d Cir. 1999) (quoting *Davis*, 526 U.S. at 649) (internal quotation marks omitted). "On the contrary, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 648–49.

The Amended Complaint, on its face, alleges facts demonstrating that NYLS did not act with deliberate indifference in response to Nesbit's harassment of female students. The Amended Complaint reflects that on August 28, 2014, upon receiving notice that Nesbit was intoxicated on campus attempting to flirt with female students, Nesbit was removed from campus. Am. Compl., Ex. A at 1. After Nesbit's attack on Plaintiff on October 6, 2014, the School also promptly removed Nesbit from campus, permitting him to return only after being assessed by a mental health professional. *Id.* ¶¶ 5, 8, Ex. C at 3. The School convened a Panel to investigate the attack within days of its occurrence, and approximately one month after Nesbit's return—after reviewing evidence, interviewing witnesses, and speaking with School administrators—the Board implemented a number of sanctions against Nesbit targeted to limit his presence on campus, particularly at times when Plaintiff would also be there. *Id.*, Ex. A at 4–5 (listing sanctions). Although Plaintiff contends that Nesbit should have been expelled for his conduct, "victims do not have a right to specific remedial measures." *Zeno*, 702 F.3d at 666 (citing *Davis*, 526 U.S. at 648). In light of the circumstances, including the non-physical nature of the August 28, 2014 incidents and the severity of the sanctions ultimately imposed by the Board, the Court concludes that the School's response to Nesbit's harassment was not clearly unreasonable as a matter of law. Accordingly, Plaintiff's Title IX claim premised on Nesbit's harassment must be dismissed. *See Davis*, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts, on a motion to dismiss, . . . could not identify a response as not 'clearly unreasonable' as a matter of law.").

Plaintiff additionally alleges that NYLS violated Title IX by retaliating against her for complaining about harassment. Am. Compl. ¶¶ 9–11. "[R]etaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of [Title IX].'" *Jackson v. Birmingham Bd. of Edu.*, 544 U.S. 167, 183 (2005) (quoting *Davis*, 526 U.S. at 642). In order to succeed on such a claim, Plaintiff will first need to establish a prima facie case by showing: (1) protected activity; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011).[7] At the pleading stage, however, a plaintiff need not plead facts giving plausible support to the "ultimate question" of whether an adverse action was attributable to discrimination; rather, the facts need only give plausible support to a "minimal inference" of discriminatory motivation. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Second Circuit has clarified that "the inference of discriminatory intent supported by the pleaded facts [need not] be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible." *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (emphasis in original); *see also Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face . . . .").

Here, Plaintiff has met her exceedingly low burden of demonstrating a plausible minimal inference that NYLS retaliated against her because of her complaints. Plaintiff alleges that she complained to School officials throughout the 2014–2015 school year and actively participated

---

[7] "Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. After the defendant has done so, the burden shifts back to the plaintiff to demonstrate that the articulated reasons are pretextual." *Papelino*, 633 F.3d at 92 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804–05 (1973)) (citation omitted).

in the School's disciplinary process against Nesbit.  Am. Compl. ¶¶ 6–8, Ex. A, Ex. B at 2, Ex. E at 3–4.  Shortly after she received the School's final decision with respect to Nesbit, Plaintiff made known to School officials her decision to transfer law schools.  *Id.* ¶ 9, Ex. D.  However, Plaintiff was unable to obtain a letter of recommendation that was required for her application.  *Id.* ¶ 9, Ex. E at 1, 4.  When she returned to NYLS for the fall 2015 semester, she received the worst grades of her law school career.  *Id.* ¶ 10, Ex. E at 1, Ex. F at 2.  Assuming Plaintiff's allegations to be true, as the Court must at this stage, the Court finds it at least minimally plausible to infer that the School took adverse action against Plaintiff because of her repeated complaints.  *See Papelino*, 633 F.3d at 91 ("Close temporal proximity between the plaintiff's protected activity and the . . . adverse action may in itself be sufficient to establish the requisite causal connection.") (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)).  Accordingly, Plaintiff may proceed on her Title IX retaliation claim against NYLS.[8]

### C.  State Law Claims

Plaintiff's state law claims are not entirely clear.  The Amended Complaint states broadly that Plaintiff is seeking damages for Defendants' "violations of tort, contract and [New York's General Business Law ("GBL")] § 349."  Am. Compl. ¶ V.  The pleading also references Plaintiff's "[s]evere emotional distress from defendants' intentional and persistent failure to respond reasonably to complaints" and Defendants' "misrepresentations," "inducements" to minority applicants, and "fraud."  *Id.* ¶ IV.  Plaintiff slightly clarifies her claims in her opposition brief by making arguments as to "common law fraud," "misrepresentation," having been

---

[8] The Court's decision to allow Plaintiff to go forward on her retaliation claim "in no way suggests that [the] court has any view, one way or the other, on the likely accuracy of what Plaintiff has alleged. . . . The role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed."  *Doe*, 831 F.3d at 59.

"fraudulently induced," and "hav[ing] not received" the benefit of her contract with NYLS.  Pl.'s Opp'n Mem. at 27–28.

The submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.  *Hill*, 657 F.3d at 122; *Triestman*, 470 F.3d at 475.  At the same time, a party's *pro se* status does not exempt her from compliance with relevant rules of procedural and substantive law, and the Court cannot read into *pro se* submissions claims that are not consistent with the allegations.  *Triestman*, 470 F.3d at 477.  With these principles in mind, the Court construes the Amended Complaint to assert state law claims against Defendants for violations of GBL § 349, breach of contract, fraud, and intentional infliction of emotional distress.[9]  The Court addresses each of these claims in turn.

### 1.  GBL § 349

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  "In addition to [a] right of action granted to the attorney general," the statute permits "any person who has been injured by reason of any violation" of the statute to bring an action for damages and/or injunctive relief.  *Id.* § 349(h).  "Although a person's actions may at once implicate both, [GBL] § 349 contemplates actionable conduct that does not necessarily rise to the level of fraud."  *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999).

In order to succeed on her GBL § 349 claim, Plaintiff must ultimately prove that (1) Defendants engaged in an act or practice that is deceptive or misleading in a material way; (2) she was injured by reason thereof; and (3) the deceptive act or practice is "consumer

---

[9] Plaintiff explicitly disclaims liability on the basis of negligence.  Am. Compl. ¶ 5; *see also id.* ¶ IV (referring to Defendants' "intentional" conduct).

oriented." *Gaidon*, 725 N.E.2d at 603–04.  A "deceptive act or practice" is a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 604 (quoting *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 668 (N.Y. 1999)).

Here, Plaintiff alleges that NYLS advertised and marketed the diversity of the School and reputation of its faculty to diverse and minority applicants like herself, that the School's representations in this regard were false, and that she detrimentally relied on these "inducements" by deciding to attend and remain at NYLS and accrue over $200,000 in student loan debt.  Am. Compl. ¶ IV.  Irrespective of whether Plaintiff will ultimately be able to satisfy her burden of proof, the Court finds Plaintiff's allegations sufficient to make out a plausible claim against NYLS for violation of GBL § 349.  *See, e.g.*, *Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 17 (1st Dep't 2012) (noting that NYLS's efforts to sell its services to prospective students was "consumer-oriented," but dismissing plaintiff's claim under GBL § 349 because the information published by the School was truthful).  Accordingly, Plaintiff will be permitted to proceed on this claim.  As none of the aforementioned allegations relate specifically to any of the individual Defendants' conduct, however, Plaintiff's GBL § 349 claims against those Defendants are dismissed.

### 2.  Breach of Contract

In New York, a student may bring a breach of contract action against an institution of higher education, such as NYLS.  *Keefe v. N.Y. Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010); *see also Papelino*, 633 F.3d at 93; *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 369 (S.D.N.Y. 2016); *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015).  "However, only specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an

implied contract." *Keefe*, 71 A.D.3d at 570.  "Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–07 (S.D.N.Y. 1998) (quoting *André v. Pace Univ.*, 170 Misc. 2d 893, 896 (2d Dep't 1996)).

Here, Plaintiff does not allege the existence of a contract with any individual Defendant. As a result, her contract claims against those individuals must be dismissed.  By contrast, although the Amended Complaint is silent on the point, Plaintiff argues in her opposition brief that she entered into a contract with NYLS "for education services that [she] [did] not receive[]." Pl.'s Opp'n Mem. at 28.  This allegation alone is too vague to serve as the basis for a contract claim against an educational institution under New York law and, accordingly, the claim against NYLS must also be dismissed.  *See Keefe v. N.Y. Law Sch.*, 25 Misc. 3d 1228(A), at *2 (Sup. Ct., N.Y. Cnty. 2009) (granting motion to dismiss a contract claim against NYLS where the plaintiff "fail[ed] to point to any document or communication that [gave] rise to a promise which NYLS [had] breached"), *aff'd*, 71 A.D.3d 569 (1st Dep't 2010); *see also Gally*, 22 F. Supp. 2d at 207 ("[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted.").  Because it is not clear that granting Plaintiff leave to replead her contract claim against NYLS would be futile, however, the claim against NYLS is dismissed without prejudice.

### 3. Fraud

To state a claim for fraud in New York, a plaintiff must allege "that the defendant knowingly made a false statement of material fact with the intent to induce the plaintiff's reliance, and also that the plaintiff did in fact rely on that false statement to [her] detriment."

*Apex Maritime Co. v. OHM Enters., Inc.*, No. 10 Civ. 8119 (SAS), 2011 WL 1226377, at \*2 (S.D.N.Y. Mar. 31, 2011) (quoting *Lomaglio Assocs. Inc. v. LBK Marketing Corp.*, 876 F. Supp. 41, 44 (S.D.N.Y. 1995)).  In addition, the plaintiff must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  In other words, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Hirsch v. Columbia Univ., Coll. of Physicians & Surgeons*, 293 F. Supp. 2d 372, 381 (S.D.N.Y. 2003) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, Plaintiff fails to state with particularity the elements of her fraud claims against the Defendants.  Having reviewed the Amended Complaint and Plaintiff's opposition brief, it is still unclear to the Court whether Plaintiff is alleging that the fraud consisted of statements NYLS made in advertising materials or a campus safety poll, or statements School administrators made in meetings concerning Nesbit.  *See* Am. Compl. ¶ 5, 7, IV; Pl.'s Opp'n Mem. at 12, 27–28.  Because Plaintiff's claim for fraud fails to satisfy Rule 9(b), the claim must be dismissed.  Plaintiff will, however, have the opportunity to replead her claim in a Second Amended Complaint.

### 4.  Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress in New York, a plaintiff must allege:  (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress.  *McGrath*, 672 F. Supp. 2d at 492; *see also Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).  The standard for asserting a claim is

"rigorous, and difficult to satisfy." *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 604 (S.D.N.Y. 2011) (quoting *Howell*, 612 N.E.2d at 702). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 612 N.E.2d at 702.

Plaintiff alleges that certain School administrators lied to her about whether other students had complained about Nesbit prior to her attack, told her Nesbit was "good" and "well-liked" while she made her complaints, were hostile to her in response to her complaints, and retaliated against her for complaining by preventing her from transferring schools and awarding her bad grades. Am. Compl. ¶¶ 5–11. Despite the serious nature of these allegations, the Court cannot conclude that Defendants' treatment of Plaintiff approached the level of extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress under New York law. Accordingly, Plaintiff's claim for intentional infliction of emotional distress is dismissed. Since Plaintiff may be able to supplement her allegations, Plaintiff will be permitted to replead the claim in a Second Amended Complaint.

**D. New Claims**

In her opposition brief, Plaintiff asserts, for the first time, claims under 42 U.S.C. § 1985(3), Title VI of the Civil Rights Act of 1964, and the First Amendment. Pl.'s Opp'n Mem. at 21–25. Because these claims were not asserted in the Amended Complaint, the Court may not consider them in deciding Defendants' motion to dismiss. *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the

briefs in opposition to a motion to dismiss.").  The Court has, however, considered whether to

allow Plaintiff the opportunity to plead these claims in a Second Amended Complaint.

To state a claim for conspiracy to commit a civil rights deprivation under Section

1985(3), a plaintiff must plausibly allege:

> (1) a conspiracy; (2) to deprive directly or indirectly any person of
> equal protection of the laws, or of equal privileges and immunities;
> and (3) an act in furtherance of the conspiracy; (4) whereby his
> person or property is injured or he is deprived of any right of a U.S.
> citizen.

*Roberts v. City of New York*, No. 14 Civ. 5198 (GHW), 2016 WL 4146135, at *8 (S.D.N.Y. Aug.

2, 2016).  Plaintiff alleges that Defendants conspired to prevent her from reporting Nesbit's

attack to the police because of her gender.  Pl.'s Opp'n Mem. at 21–22; *see N.Y. State Nat'l Org.*

*for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir. 1989) (holding that women may constitute a

class for purposes of Section 1985(3)).  Plaintiff provides no allegations regarding any acts taken

in furtherance of a conspiracy, however, and she fails to raise even a plausible minimal inference

that Defendants were motivated by discriminatory animus towards women.

Title VI provides that "[n]o person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance."

42 U.S.C. § 2000d.  To state a claim for a violation of the statute, a plaintiff must plausibly

allege that (1) the defendant discriminated against her on the basis of race, color, or national

origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial or

motivating factor for the defendant's actions.  *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir.

2001).  Plaintiff alleges that NYLS "targeted diverse students . . . through fraudulent, misleading,

and unsavory advertising and marketing strategies" and that "asking for help at NYLS as a black

student will not get you anywhere."  Pl.'s Opp'n Mem. at 24.  These cryptic race-related allegations are insufficient to adequately state a claim under Title VI.

Although Plaintiff fails to set forth facts to sufficiently plead a claim under either Section 1985(3) or Title VI, Plaintiff will be permitted an opportunity to supplement her allegations as to these claims in a Second Amended Complaint.  Amending her complaint to include a First Amendment claim would be futile, however, as Plaintiff cannot show that Defendants acted under color of state law.  *See supra* Section III.A; *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("[I]t is fundamental that the First Amendment prohibits governmental infringement on the right of free speech.").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part.  Plaintiff is permitted to proceed on her Title IX retaliation claim and GBL § 349 claim against NYLS, and Plaintiff is granted leave to replead her breach of contract claim against NYLS, her fraud claims against all Defendants, her intentional infliction of emotional distress claims against all Defendants, her Section 1985(3) claims against all Defendants, and her Title VI claim against NYLS.  Plaintiff's remaining claims are dismissed with prejudice.  Plaintiff's Second Amended Complaint must be filed, if at all, on or before **March 29, 2017**.  The parties are directed to appear for a conference on **May 3, 2017**

**at 10:30 a.m.** The Clerk of the Court is respectfully directed to terminate the motions, Docs. 11 and 19.[10]

It is SO ORDERED.

Dated: March 1, 2017
New York, New York

Edgardo Ramos, U.S.D.J.

---

[10] On June 14, 2016, Plaintiff filed a request that the Court take notice of the fact that, contrary to what Defendants marked on their Civil Cover Sheet, she did demand a jury trial in her state court complaint.  Doc. 11.  The Court acknowledges that Plaintiff indeed made such a request.