UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THERESA BAILEY,

                              Plaintiff,

        – against –

NEW YORK LAW SCHOOL, ANTHONY
CROWELL, DEBORAH ARCHER, HOWARD
MEYERS, JEFFERY BECHERER, ERIKA
WOOD, ORAL HOPE, VICTORA EASTUS,
DAVID SCHOENBROD, ELLA MAE
ESTRADA, and BARBARA GRAVES-POLLER,

                              Defendants.

**OPINION AND ORDER**

16 Civ. 4283 (ER)

Ramos, D.J.:

     *Pro se* plaintiff Theresa Bailey ("Plaintiff") brings this action against New York Law

School ("NYLS"), Anthony Crowell, Deborah Archer, Howard Meyers, Jeffery Becherer, Erika

Wood, Oral Hope, Victoria Eastus, David Schoenbrod, Ella Mae Estrada, and Barbara Graves-

Poller (collectively, "Defendants").  Before this Court are (1) Plaintiff's motion to amend the

Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 15; and

(2) Defendants' partial motion to dismiss the SAC pursuant to Rule 12(b)(6).

     For the following reasons, Plaintiff's motion to amend is GRANTED in part and

DENIED in part, and Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I.    BACKGROUND

     The Court presumes familiarity with the facts and procedural history of this case, which

are detailed in the March 1, 2017 order ("March Order"), Doc. 24, granting in part and denying

in part Defendants' motion to dismiss the First Amended Complaint ("FAC").  It discusses here

only those facts necessary for the disposition of the instant motions.

**A.  Defendants' Motion to Dismiss the First Amended Complaint**

On July 5, 2016, Plaintiff filed the FAC against the defendants named in the original complaint:  NYLS, Anthony Crowell, Deborah Archer, Howard Meyers, Jeffery Becherer, and Erika Wood.  Doc. 17.  As construed by this Court in the March Order, she asserted the following causes of action:  (1) violation of Section 1983, (2) discrimination and retaliation under Title IX of the Education Amendments of 1972, (3) violation of New York General Business Law ("GBL") Section 349, (4) breach of contract, (5) fraud, and (6) intentional infliction of emotional distress.  *See* March Order at 9-22.

On August 8, 2016, Defendants filed a motion to dismiss the FAC in its entirety. Doc. 19.  Plaintiff filed her opposition brief on September 1, 2016 in which she asserted for the first time new claims under the First Amendment, 42 U.S.C. § 1985(3), and Title VI of the Civil Rights Act of 1964.  Doc. 21.

In the March Order, the Court permitted Plaintiff to proceed on her Title IX retaliation and GBL Section 349 claims against NYLS, granted leave to re-plead her breach of contract and Title VI claims against NYLS, and granted leave to re-plead her fraud, intentional infliction of emotional distress, and Section 1985(3) claims against all Defendants.  *Id.* at 22.  The Court denied all remaining claims with prejudice, including her Title IX claims against individual Defendants, Title IX discrimination claim against NYLS, Section 1983 claims, and First Amendment claim.  *Id.*

**B.     Second Amended Complaint[1]**

On March 21, 2017, Plaintiff requested leave to add Oral Hope and Victoria Eastus as defendants in her proposed SAC, which the Court granted on March 22, 2017.  Docs. 29-31.  On March 29, 2017, Plaintiff filed the SAC.  Doc. 32.  Without receiving prior consent from Defendants or approval from this Court, however, she also (1) named three additional individual defendants (Ella Mae Estrada, David Schoenbrod, and Barbara Graves-Poller); (2) asserted for the first time New York State Human Rights Law ("NYHRL") claims; and (3) re-alleged the Title IX claims against individual Defendants and the Title IX discrimination claim against NYLS, which were previously dismissed with prejudice in the March Order.  *Id.*  Specifically, the SAC asserts the following causes of actions:  (1) violation of Title IX against all Defendants, (2) violation of NYHRL against all Defendants, (3) violation of GBL Section 349 against NYLS, (4) breach of contract against NYLS, (5) fraud against all Defendants, (6) intentional infliction of emotional distress against all Defendants, (7) violation of Section 1985(3) against all Defendants, and (8) violation of Title VI against all Defendants.  *Id.*

The core of Plaintiff's allegations in the SAC are the same as in her FAC:  that on October 6, 2014, a male student at NYLS named Stephen Nesbit ("Nesbit") sexually assaulted her on campus; that Defendants purportedly failed to adequately investigate the incident or discipline Nesbit; and that Defendants retaliated against Plaintiff for reporting the attack.  *Id.* ¶¶ 7-12.  The SAC alleges the following facts.

**1.   Marketing by NYLS**

Plaintiff alleges that NYLS marketed itself to prospective students as "an oasis for

---

[1] The following facts are drawn from allegations contained in the SAC, Doc. 32, which the Court accepts as true for purposes of the instant motion, and documents attached to the SAC.  *See New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017) (citation omitted).

women and minorities." *Id.* ¶ 51. NYLS publicized that it admitted more women than men between 2011 and 2014; filed five amicus briefs concerning discrimination against minority groups between 2012 and 2016; published a "Campus Safety Report" showing a lack of any serious misconduct on campus during the 2012 reporting period; lauded minority female students on its website; promoted social justice events that highlighted staff participation; partnered with the Courtroom Advocates Project, which assists victims of domestic violence through courtroom advocacy; and noted in its Code of Conduct and Student Handbook that it was committed to complying with Title IX. *Id.* ¶¶ 42-46. NYLS also purportedly gave assurances that gender-based harassment and discrimination would not be tolerated and would be adequately adjudicated by NYLS. *Id.* ¶¶ 46, 52-53.

Contrary to the information contained in those marketing materials, however, Plaintiff learned of four specific instances of discrimination when she became a student: a black female student reported a classmate for racist remarks; a black female complained about a professor's behavior towards her;[2] a Hispanic female student's books were stolen; and other female students previously reported Nesbit and he was kicked out of class by a female professor. *Id.* ¶ 48. In addition, the SAC notes that NYLS did not disclose statistics concerning the number and nature of the complaints by students who suffered discrimination, and Plaintiff claims that such information would have been relevant to deciding if she wanted to attend a law school and "if [NYLS is] worth more than $200,000." *Id.* ¶ 49.

### 2. Alleged Contractual Provisions

Plaintiff further alleges that NYLS made the following representations in either the Code of Conduct, the 2012-2013 Student Handbook or in its admissions letter to her:

---

[2] Plaintiff does not further explain the content of this complaint.

- NYLS "does not discriminate on the basis of . . . any other classification protected by federal, state, and local law, in the administration of any of its educational programs and activities." *Id.* ¶ 71 (NYLS's non-discrimination policy).

- "Conduct for which disciplinary action may be taken shall include . . . intentionally [or] . . . recklessly . . . attempting . . . or threatening . . . [to] injur[e] members of the Law School . . . [or to] [w]rongfully depriv[e] members . . . of services or opportunities." *Id.* ¶ 62 (2012-2013 Student Handbook Section 1(B)).

- "All New York Law School personnel and students are expected and encouraged to report, and to cooperate in the investigation and [h]earing of, possible violations." *Id.* ¶ 65 (2012-2013 Student Handbook Section 3(A)).

- "Refusal by any student to participate as a witness may be considered a violation of section 3F of this Code." *Id.* ¶ 67 (2012-2013 Student Handbook Section 4(C)).

- "The Fact Finder is responsible for gathering and presenting information in an impartial and thorough manner," and the investigation and the Investigation Panel "should be impartial and thorough." *Id.* ¶¶ 63, 66 (2012-2013 Student Handbook Section 2(3)).

- "The Investigation Panel shall review the report of the Fact Finder and any relevant written materials." *Id.* ¶ 66 (2012-2013 Student Handbook Section 3(D)).

- Dean Anthony Crowell "may take action to deal with situations of an emergency nature posing a threat to the safety or health of the Law School." *Id.* ¶ 59 (2012-2013 Student Handbook Section 1(C)(3)).

- Dean Anthony Crowell "may meet with the Student [at his or her request] to consider reasons why the report of the Panel should or should not be adopted before the Dean makes a determination." *Id.* ¶ 68 (2012-2013 Student Handbook Section 5(C)).

- "No seriously impaired individual should be allowed to leave the Law School premises by him/herself." *Id.* ¶ 69 (2012-2013 Student Handbook at 32).[3]

- "New York Law School is committed to providing you with the best tools available . . . [T]he benefits of your education will be substantial . . . [W]e look forward to making your education as rewarding as possible . . . [C]all, or write to [Crowell] via e-mail." *Id.* ¶ 56 (Admissions Letter from Crowell).

---

[3] Plaintiff claims that NYLS violated this provision because even though Nesbit was intoxicated on August 28, 2014, and had no recollection of being on campus on October 6, 2014, NYLS threw him out of campus without an escort. *Id.* ¶ 69.

### 3. Alleged Improper Handling of Plaintiff's Report

Plaintiff alleges that she reported the October 6, 2014 incident to Oral Hope, the Assistant Dean and Registrar, and Victoria Eastus, Assistant Dean of Academic Affairs and the Title IX Coordinator, on October 7, 2014. *Id.* ¶¶ 3, 20-21, 65. However, they allegedly failed to adequately assist Plaintiff. *Id.* ¶¶ 17, 19-22, 28, 76-78, 81, 92. Specifically, in various conversations between October 7 and October 22, 2014, Hope declined to answer whether the surveillance cameras in the hall where the incident took place were working, what the campus security protocol was for such incidents, and why security did not come for her after she was escorted to her classroom by another male student. *Id.* ¶¶ 19, 77. Instead, he simply responded that Nesbit was no longer on campus. *Id.* During conversations she had with Eastus in that same time period, Eastus answered that Nesbit was "good" and "well-liked" in response to Plaintiff's questions concerning whether she was targeted by Nesbit because she was a woman. *Id.* ¶¶ 20, 76.

Plaintiff alleges that notwithstanding their responses to her inquiries, Hope and Eastus had access to information that they did not share with her showing that Nesbit had previously targeted women on campus, and that these women reported the incidents. *Id.* ¶¶ 21-22, 78. Instead, Eastus allegedly stated that NYLS had not received other complaints about Nesbit. *Id.* ¶ 76. Plaintiff states that had she known about the other complaints, she would have concluded that NYLS was not competent to handle her complaint, and reported Nesbit to the police. *Id.* ¶ 78.

Four days after the incident, on October 10, 2014, Meyers, the Chair of the Harassment and Discrimination Review Board at NYLS, convened an Investigation Panel consisting of Becherer, Assistant Dean for Career Planning, and Wood, Associate Professor of Law, to

investigate the incident. SAC Ex. B ("Investigation Report") at 1. The Investigation Panel interviewed Plaintiff on October 20, 2014[4] and November 5, 2014. *Id.* at 3.

On October 26, 2014, prior to the issuance of the Investigation Report, Plaintiff sent Crowell, the Dean, and Archer, the Dean of Diversity & Inclusion and Director of the Racial Justice Project, an email concerning the incident and NYLS's alleged mishandling of her complaint. SAC ¶¶ 3, 24; SAC Ex. A ("May 3, 2016 Email") at 5. This email was considered her "formal written complaint." Investigation Report at 1; SAC Ex. C at 2. In her email to Crowell and Archer, Plaintiff stated, *inter alia*, that NYLS personnel had acted improperly after she reported Nesbit's harassment. *See* SAC Ex. F. She alleges that Crowell never responded to the email, and that when she met with Archer to discuss it, she was "oppositional, abrasive, hostile, and defensive." SAC ¶¶ 25-26, 57. Plaintiff then contrasts how she was treated by Crowell with the way he treated two male NYLS students. *Id.* ¶ 26. She notes that after a white male student was "found sleeping in the school after hours," Crowell personally hired him for an NYLS work-study position in which he reported directly to Crowell. *Id.* ¶¶ 26, 58. Crowell also recommended another male student, with a grade point average below 2.5, for a legal job upon request. *Id.* ¶¶ 26, 60. Moreover, Crowell did not meet with Plaintiff about her concerns, but he did meet with Nesbit. *Id.* ¶ 82.

As part of the investigation, the Investigation Panel reviewed Plaintiff's written complaint; a report from a security officer; security camera footage; interviews with Plaintiff, Nesbit and a witness to the incident; and conversations with certain school administrators. Investigation Report at 2. On November 25, 2014, NYLS adopted the Investigation Panel's

---

[4] In the meantime, on October 20, 2014, Plaintiff also reported the incident to the police. SAC Ex. F at 3. According to Plaintiff, the police informed her that she had reported the incident too late, and that she should consult an attorney. SAC Ex. C at 2.

findings and recommendations. *See id.*; May 3, 2016 Email at 5. As adopted by NYLS, the Investigation Report concluded that Nesbit violated Section I.B.2 of the Non-Discrimination and Harassment Policy, which prohibits "subjecting an individual to humiliating, offensive, abusive or threatening conduct that creates intimidating, hostile or abusive work, residential or academic environment, . . . or unreasonably interferes with an individual's academic . . . performance *on the basis of the individual's Protected Classification*." Investigation Report at 1 (emphasis added). It also issued a number of sanctions against Nesbit, including: (1) prohibiting him from appearing on campus until January 11, 2015, and restricting his presence on campus thereafter to only his classes and co-curricular activities; (2) placing him on probation through his graduation at NYLS, meaning that any further Non-Discrimination and Harassment Policy violation would result in his immediate expulsion; (3) permitting him to enroll only in classes that met between 9:00 a.m. and 5:40 p.m., presumably because Plaintiff was a night student, thereby minimizing the likelihood that the two would come into contact; (4) preventing him from enrolling in any classes in which Plaintiff was enrolled; (5) requiring him to obtain approval of his schedule from the Assistant Dean for Academic Affairs; and (6) requiring him to attend a harassment training program. *Id.* at 4-5. Furthermore, following his graduation from NYLS, Nesbit would be permitted to appear on campus only to attend a bar review course, and upon completing the bar examination in July 2015, Nesbit would be prohibited from appearing on campus until Plaintiff graduated and completed her bar examination. *Id.* at 5.

Despite the findings in her favor, Plaintiff disagreed with the Investigation Panel's recommendation, and moved for a rehearing. SAC Ex. C at 2. The rehearing was initially scheduled for March 19, 2015, but was rescheduled because Nesbit failed to appear. *Id.* On March 26, 2015, the rehearing was held. *Id.* Although Plaintiff does not describe the results in

detail, it appears that NYLS did not change its decision and allowed Nesbit to graduate from NYLS.  May 3, 2016 Email at 3, 5; SAC ¶ 25.

Plaintiff claims that the investigation and the hearing were inadequate.  Specifically, Plaintiff objects that NYLS wrongfully allowed the male student who had witnessed the incident to refuse to testify at the hearing, and failed to resolve whether there was staff misconduct during the investigation.  SAC ¶¶ 18, 67.  Moreover, Nesbit claimed to NYLS that he did not abuse alcohol and did not commit any misconduct on campus against other females.  *Id.* ¶¶ 18, 63, 64, 67.  Although NYLS had written complaints that showed Nesbit's statements to be false, NYLS allegedly accepted his testimony.[5]  *Id.*

### 4.  Retaliation

Plaintiff allegedly faced retaliation for reporting the incident, such as receiving a failing grade in Professor Barbara Graves-Poller's Family Law class, and receiving a D + in Professor David Schoenbrod's Remedies class.  *Id.* ¶¶ 34-36.  Plaintiff states that Graves-Poller had "personal disdain" for her, ignoring Plaintiff when she raised her hand even though Graves-Poller was "begging" students to participate and the other African-American female students seldom raised their hands.[6]  *Id.* ¶ 35; May 3, 2016 Email at 1-2.  She also failed to provide Plaintiff with a nameplate and ignored Plaintiff's requests for a nameplate.  May 3, 2016 Email at 1.  Graves-Poller also allegedly once mischaracterized Plaintiff's answer in class.[7]  *Id.* at 2. Plaintiff was the only one in the class that was treated in this manner.  *Id.* at 1-2.  Because of

---

[5] The Court notes that, in apparent tension with Plaintiff's assertions, the Investigation Report, which is included as an attachment to the SAC, states that there were two other complaints involving female students, and that Nesbit was "intoxicated" on the date of the first incident, August 28, 2014, and "under the influence of prescription medication" on the date of the second incident, October 6, 2014.  Investigation Report at 1, 3-4.

[6] Plaintiff does not specify whether the alleged disdain Graves-Poller harbored towards her pre-dated the incident.

[7] Plaintiff answered in class that a particular case's holding made her hold her "breath," but Graves-Poller responded by asking Plaintiff what it was about the case that made her hold her "nose."  May 3, 2016 Email at 2.

these incidents, Plaintiff requested approval from NYLS to transfer from Graves-Poller's class, despite the fact that the period during which students could elect to transfer classes had passed. *Id.* at 2; SAC ¶ 35. While Plaintiff acknowledges that her belated request to transfer from Graves-Poller's class was nonetheless granted, she asserts, inexplicably, that Graves-Poller failed her for not complying with the attendance policy. SAC ¶ 35.

At Eastus's suggestion, Plaintiff met with Schoenbrod about the D + she received in his class. *Id.* ¶ 36. However, Schoenbrod allegedly did not have a good explanation. *Id.* He refused to consult or show Plaintiff the comments he made on the exam, and had no adequate response when Plaintiff pointed out material in her answers that he claimed was missing. *Id.*; May 3, 2016 Email at 3. She allegedly later discovered that Schoenbrod had been a part of NYLS's March 26, 2015 rehearing process concerning the incident, but she does not specify the role he had.[8] May 3, 2016 Email at 3; SAC Ex. C at 2.

In June 2015,[9] Plaintiff met Crowell and asked him for help in transferring to another school. *Id.* ¶ 38. Plaintiff claims that her transfer application was also hampered by Defendants' retaliation. *Id.* ¶¶ 37-39. Crowell enlisted the help of Ella Mae Estrada, the Associate Dean of Enrollment Management, Financial Aid and Diversity Initiatives. *Id.* ¶¶ 3, 38. In an email dated June 5, 2015, Estrada wrote to Plaintiff stating, "I apologize for the delay. Please see the attached spreadsheet that we were working on earlier today. I'll look over your personal statement this weekend and provide feedback." SAC Ex. H at 1. Five days later, on June 10, 2015, Plaintiff responded to Estrada, providing a revised personal statement and requesting that

---

[8] During the re-hearing, Schoenbrod allegedly stated that he was not aware that the initial incident occurred approximately six months prior. SAC Ex. C at 1.

[9] The SAC states that the meeting was in "June 2014," but the Court assumes that this is a typographical error since the encounter with Nesbit did not occur until October 6, 2014, and she only sought to transfer law schools after that incident.

Estrada review the document. *Id.* On July 14, 2015, Estrada wrote to Plaintiff in an email, "I wanted to check in with you to see how you were doing; as well as, how the transfer process has been? I know that most schools have a deadline of July 15th. I thought I would touch base with you." *Id.* at 2. Plaintiff asserts that law school transfer application deadlines had already passed by that date. SAC ¶ 39. She attributes Estrada's late email to the fact that Crowell and Estrada "conspired to deny NYLS assistance in the transfer process." *Id.*

### C.     Proposed Third Amended Complaint

On May 12, 2017, the Court held a pre-motion conference during which the Defendants requested leave to file a motion to dismiss the SAC on the ground that Plaintiff's revised pleadings did not cure the defects identified in the FAC. The Court granted Plaintiff leave to submit a Third Amended Complaint ("TAC") to remedy those defects to comply with the March Order, and specifically advised her that she could not unilaterally amend her pleadings to add new claims or parties without the Court's permission or the Defendants' consent.

By letter dated June 7, 2017, Plaintiff requested permission from the Court to join the three new defendants and add NYHRL claims. Doc. 43. Defendants opposed Plaintiff's request on June 14, 2017. Doc. 45. On June 15, 2017, the Court directed Plaintiff to file a formal motion to amend if she wished to add the new proposed defendants and claims. Doc. 46.

On July 17, 2017, Plaintiff filed her motion to amend the SAC, attaching a proposed TAC. Doc. 49. The proposed TAC seeks to add Estrada, Graves-Poller and Schoenbrod as defendants and asserts the following causes of actions: (1) violation of Title IX against NYLS, (2) violation of NYHRL against all Defendants, (3) violation of GBL Section 349 against NYLS, (4) breach of contract against NYLS, (5) fraud against all Defendants, (6) intentional infliction of emotional distress against all Defendants, (7) violation of Section 1985(3) against all Defendants,

11

and (8) violation of Title VI against NYLS.  Notably, the proposed TAC adds the following factual allegations:

- Prior to the date of the incident, October 6, 2014, Plaintiff asked Crowell for assistance in finding employment, and was merely advised to consult the NYLS career center.  TAC ¶ 29.  Plaintiff claims that this treatment differed from the way that Crowell had assisted two male students.  *Id.* ¶¶ 28-29.

- She states that Defendants could not have begun the investigation on the date of the incident.  *Id.* ¶ 38.  The Investigation Report states that an NYLS administrative employee filed an incident report on October 6, 2014, that the Investigation Panel was convened on October 10, 2014, that it interviewed Plaintiff on October 20, 2014, and that Plaintiff submitted a formal written complaint on October 26, 2014.  Investigation Report at 1, 3.  Plaintiff states that she spoke to the Investigation Panel more than two weeks after the incident, and that, prior to that time, the investigation could not have been properly commenced.  TAC ¶¶ 38-39.

- She also states that Schoenbrod had asked her if she was dyslexic during their meeting concerning her grade in his Remedies class, which caused her to feel disgusted and ashamed.  *Id.* ¶ 51.

On August 14, 2017, the Defendants filed their motion to dismiss the SAC and opposition to Plaintiff's motion to amend the SAC.  Doc. 52.

## II.     LEGAL STANDARD

### A.       Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to

relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In the Court's review of a Rule 12(b)(6) motion to dismiss, it may consider any "documents attached to the complaint as an exhibit or incorporated in it by reference." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). If a plaintiff's own pleadings are contradicted by matters in such documents, the Court need not reconcile this difference or accept the plaintiff's pleadings as true. *Gachette v. Metro N. High Bridge*, No. 12 Civ. 3838 (AJN), 2013 WL 144947, at *1 (S.D.N.Y. Jan. 14, 2013) (citing *Fisk v. Letterman*, 401 F.Supp.2d 362, 368 (S.D.N.Y. 2005); *see also U.S. Bank Nat. Ass'n v. Bank of America, N.A.*, No. 12 Civ. 4873, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F.Supp.2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true.").

The same standard applies to motions to dismiss *pro se* complaints. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see also Fisk*, 401 F. Supp. 2d at 368 ("The Court . . . is not obliged to reconcile [a *pro se*] plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.").

Courts also generally construe a *pro se* complaint liberally and interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). However, "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir. 2010). Plaintiff's pleadings suggest that she is not a practicing attorney and is not barred. TAC ¶ 1. Thus, the Court will grant leniency to Plaintiff's pleadings, though less than that would be afforded a *pro se* litigant without *any* legal education. Nevertheless, "[e]ven *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson*, 709 F. Supp. 2d at 224 (quoting *Twombly*, 550 U.S. at 555). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557); *see also Triestman,* 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

### B.      Rule 15 Motion to Amend

Parties are entitled to amend their pleadings once, as a matter of course, within 21 days after serving the pleading or, if a responsive pleading is required, within 21 days after service of a responsive pleading or a Rule 12 motion. Fed. R. Civ. P. 15(a)(1). A party may not otherwise amend its pleading without either the written consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The

Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Second Circuit has stated that a court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Motions to amend are ultimately within the discretion of the district courts, *Foman*, 371 U.S. at 182, and they should be handled with a "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)) (internal quotation marks omitted). "Courts in this district have consistently granted motions for leave to amend a complaint where facts and allegations developed during discovery are closely related to the original claim and are foreshadowed in earlier pleadings." *Stonewell Corp. v. Conestoga Title Ins. Co.*, No. 04 Civ. 9867 (KMW) (GWG), 2010 WL 647531, at *2 (S.D.N.Y. Feb. 18, 2010). Although permissive, the standard for leave to amend "is by no means 'automatic.'" *Billhofer v. Flamel Technologies, S.A.*, No. 07 Civ. 9920, 2012 WL 3079186, at *4 (S.D.N.Y. July 30, 2012) (quoting *Klos v. Haskel*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993)).

Leave to amend may also be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). The party opposing the amendment has the

burden of establishing its futility. *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38

(E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## III.    DISCUSSION

### A.    Claims Permitted to be Re-Pleaded

In the March Order, the Court expressly allowed Plaintiff to re-plead her breach of

contract and Title VI claims against NYLS, and her fraud, intentional infliction of emotional

distress, and Section 1985(3) claims against all Defendants.[10]   March Order at 22.   Defendants

challenge the sufficiency of her amended pleadings in both the SAC and the proposed TAC.

#### 1.    Breach of Contract Claim Against NYLS

"The elements of a breach of contract claim in New York are:  (1) the existence of a

contract, (2) performance by the party seeking recovery, (3) non-performance by the other party,

and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty*

*LLC.*, 156 F. App'x 349, 350-51 (2d Cir. 2005) (citation omitted).  The "relationship between a

university and its students is contractual in nature." *Yu v. Vassar Coll.*, 97 F. Supp. 3d. 448, 481

(S.D.N.Y. 2015) (citation omitted).  When a student is admitted to a school, "an implied contract

forms and the terms of the agreement are 'supplied by the bulletins, circulars and regulations

made available to the student.'" *Papspiridakos v. Education Affiliates, Inc.*, No. 10 Civ. 5628

(RJD) (JO), 2013 WL 4899136 at *3 (S.D.N.Y. Sept. 11, 2013) (quoting *Dasrath v. Ross Sch. Of*

*Med.*, 494 Fed. Appx. 177, 178 (2d Cir. 2012)).  However, to assert a claim for breach of such

contracts, a student must identify "specifically designated and discrete promises." *Ward v. New*

---

[10] Although whether Plaintiff may name Estrada, Graves-Poller and Schoenbrod as additional defendants is at issue
in the instant motion to amend, the Court will also address the fraud, intentional infliction of emotional distress and
Section 1985(3) claims against these three individuals for convenience.  Any reference to the Defendants in this
section includes these three individuals.

*York Univ.*, No. 99 Civ. 8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000).

"[G]eneral policy statements" and "broad and unspecified procedures and guidelines" will not suffice. *Id.* Additionally, there is no claim of educational malpractice in New York, and students cannot circumvent this rule by couching such a claim as a breach of contract. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citation omitted).

Plaintiff alleges that NYLS breached its contract with her by acting contrary to the representations in its Code of Conduct, Student Handbook, and admissions letter. As Defendants argue, many of those statements fail to create contractual obligations. NYLS's statement of commitment to complying with non-discrimination laws, SAC ¶ 71, is a non-actionable general policy statement. Indeed, courts in this district have held that such general statements of a university's adherence to existing anti-discrimination laws cannot create independent contractual obligations. *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (citing *Blaise-Williams v. Sumitomo Bank, Ltd.*, 592 N.Y.S.2d 41, 42 (1st Dep't 1993)); *see also Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 373 (S.D.N.Y. 2017) (defendant's statement of commitment "to providing an environment free from gender-based discrimination and harassment" cannot form the basis for a breach of contract action).

Furthermore, to the extent that the statements merely provide what may occur, or encourage NYLS personnel and students to engage in certain behaviors, they are not specific and discrete promises. *See Nungesser v*, 244 F. Supp. 3d at 374-75; *see also Cheves v. Columbia Univ.*, 931 N.Y.S.2d 877, 877 (1st Dep't 2011) (holding that the alumni relations brochure listing certain benefits and services generally available to alumni did not guarantee alumni access to campus). The 2012-2013 Student Handbook provides that students *may* be disciplined for engaging in threatening or injurious conduct, that a student's refusal to participate as a witness

*may* be considered a violation, that Crowell *may* take action to deal with emergency situations, that Crowell *may* meet with students about the Investigation Panel's report, and that NYLS personnel and students were *expected and encouraged* to cooperate with investigations and hearings. SAC ¶¶ 59, 62, 65, 67-68. Crowell's admissions letter to Plaintiff also invited her to "call or write [to Crowell] via e-mail," but did not guarantee a response. *Id.* ¶ 56. Indeed, Plaintiff concedes that Crowell had discretion to assist students. *Id.* ¶ 61. Accordingly, none of these statements constitute binding contractual provisions.

However, the Court finds that Sections 2(3) and 3(D) of the Student Handbook, which deal with investigations, and page 32 of the Student Handbook, which addresses seriously impaired individuals on campus, contain enforceable contractual provisions. Section 2(3) states that "[t]he Fact Finder is responsible for gathering and presenting information in an impartial and thorough manner," and the investigation and the Investigation Panel "should be impartial and thorough;" and Section 3(D) states that "[t]he Investigation Panel shall review the report of the Fact Finder and any relevant written materials." *Id.* ¶¶ 63, 66. Plaintiff avers that NYLS breached these provisions because (1) there was no inquiry about whether Nesbit targeted women, and (2) NYLS blindly accepted Nesbit's admissions that he did not abuse alcohol and that there were no other on-campus incidents concerning women. *Id.* ¶¶ 63-64. However, these allegations are directly contradicted by the Investigation Report, which Plaintiff attaches to the SAC. The report states that the Investigation Panel examined two previous complaints in which Nesbit approached female students. Investigation Report at 1-4. It noted that Nesbit was "under the influence of prescription medication" on October 6, 2014, and was "intoxicated" on August 28, 2014. *Id.* at 1, 3-4. NYLS then concluded that Nesbit committed misconduct against Plaintiff "*on the basis of [her] Protected Classification*." *Id.* at 1 (emphasis added). As

discussed above, the Court need not reconcile pleadings that contradict documents attached to the SAC, and need not accept such pleadings as true. *Gachette*, 2013 WL 144947, at *1; *see also Amidax Trading Group*, 607 F.Supp.2d at 502; *Fisk*, 401 F. Supp. 2d at 368. Accordingly, the Court will not accept these allegations of NYLS misconduct as true, as they are contradicted by the Investigation Report.

Page 32 of the Student Handbook states that "[n]o seriously impaired individual should be allowed to leave the Law School premises by him/herself." SAC ¶ 69. Plaintiff alleges that NYLS violated this provision when they "threw [Nesbit] out" of the campus when he was intoxicated or otherwise seriously impaired. *Id.* While Nesbit may arguably have a breach of contract claim against NYLS for not escorting him outside of the premises on October 6, 2014, Plaintiff does not have standing to assert a violation of this provision because NYLS did not breach any promise to her in this regard. *Monahan v. Pena*, No. 08 Civ. 2258 (JFB)(ARL), 2009 WL 2579085, at *3 (E.D.N.Y. 2009); *Wein v. Fensterstock*, No. 04 Civ. 4640 (RO), 2004 WL 2423684, at *1 (S.D.N.Y. 2004). Plaintiff alleges that the failure shows NYLS's "poor judgment," "deference to Nesbit to [Plaintiff's] detriment" and intent to "avoid NYLS liability and poor publicity." *Id.* Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, they also do not show that Plaintiff "directly and proximately" suffered any injury as a result. *Harding v. Naseman*, No. 07 Civ. 8767 (RPP), 2009 WL 1953041, at *28 (S.D.N.Y. July 8, 2009), *aff'd*, 377 F. App'x 48 (2d Cir. 2010). Accordingly, the Court finds Plaintiff has not sufficiently pleaded a breach of contract claim in the SAC.

The Court further finds that allowing Plaintiff to amend this claim would be futile. The proposed TAC does not allege any other contractual provisions or actions by NYLS that may

constitute a breach.  Because Plaintiff had adequate opportunities to remedy her breach of contract claim and has repeatedly failed to do so, the Court dismisses the claim with prejudice.

### 2. Fraud Claims Against All Defendants

"Under New York law, to state a claim for fraud a plaintiff must demonstrate:  (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citation omitted).  In addition, the plaintiff must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  In other words, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Hirsch v. Columbia Univ., Coll. of Physicians & Surgeons*, 293 F. Supp. 2d 372, 381 (S.D.N.Y. 2003) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Or in the case of omissions, the complaint must specify "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud."  *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,* 244 F.R.D. 204, 213 (S.D.N.Y. 2007).

Plaintiff alleges that Defendants committed fraud because although NYLS made representations that it was committed to diversity and that discrimination would not be tolerated, NYLS personnel failed to act accordingly.  Specifically, Defendants allegedly made the following misrepresentations or omissions:  (1) Eastus stated that Nesbit was "good" and "well-liked;" (2) Hope stated that Nesbit was "not on campus;" (3) Eastus represented that there were

no other complaints against Nesbit at NYLS; and (4) Hope, Crowell, Archer, Meyers, Becherer, and Wood failed to disclose that other female students previously complained of Nesbit. SAC ¶¶ 76-79. However, she fails to plead sufficient facts to create a plausible inference of fraud based on these statements and omissions.

Eastus's statements concerning Nesbit's good character and reputation are not actionable false statements. Generally, statements of opinion cannot constitute fraud unless the speaker had a present intent to deceive. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 134 (2d Cir. 2008). The Court finds the statements that Nesbit was "good" and "well-liked" are value judgments. *See Canelle v. Russian Tea Room Realty LLC*, No. 01 Civ. 0616 (DAB), 2002 WL 287750, at *5 (S.D.N.Y. Feb. 27, 2002) (holding that the statement that the contract is "not great" is an opinion); *see also Sheth v. New York Life Insurance Co.,* 709 N.Y.S.2d 74, 75 (1st Dep't 2000) (noting that purported misrepresentations that are opinions of value may not form a basis for fraud). Moreover, there is no indication in any of Plaintiff's pleadings that Eastus spoke with intent to deceive. Accordingly, the statements concerning Nesbit's character and reputation are protected opinions.

Hope's statement that Nesbit was not on campus is similarly unavailing. Plaintiff concedes that Nesbit was indeed not on campus when Hope made that representation. SAC ¶ 19. Therefore, the statement was true and Plaintiff cannot serve as a premise for her fraud claim.

Plaintiff's fraud claim against Eastus, Hope, Crowell, Archer, Meyers, Becherer and Wood based on their misrepresentation or concealment of the existence of other complaints also fail because she has not pleaded reasonable reliance. Plaintiff argues that if she knew that other women reported Nesbit, she would have concluded that NYLS was incompetent to handle the investigation, and would have gone to the police earlier. *Id.* ¶ 78. The Court first notes that

Plaintiff must allege that she relied on the actual misrepresentation or omissions to her detriment, not that she relied on any other fact or *implied* message. *See Shelton v. Sethna*, No. 10 Civ. 4128 (TPG), 2012 WL 1022895, at *6 (S.D.N.Y. Mar. 26, 2012) (argument that the false statements deterred plaintiff from suing for breach of contract earlier fails because it does not involve reliance on the actual statements by the defendant, but reliance "upon a message *implied* by the false statements"); *see also Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 192 F.3d 250, 258 (2d Cir. 1999) (finding that there is no fraud claim where the cause of the detrimental effect was reliance on something other than the alleged omission). Here, Plaintiff makes clear that she relied on the implication that NYLS is a competent investigatory body in deciding not to go to the police. However, she alleges no representation or omission concerning NYLS's ability to conduct a thorough and effective investigation. Instead, she relies on the purported concealment of complaints previously made by female students to draw a negative inference, but those instances do not on their face make any suggestion concerning NYLS's investigatory competence.

Moreover, her decision not to go to the police earlier could not have been reasonably based on anything said or not said by Crowell, Archer, Meyers, Becherer or Wood. Her first contact with these Defendants occurred *after* she reported the incident to the police. Plaintiff went to the police on October 20, 2014. SAC Ex. F at 3. The first time she had any contact with Crowell and Archer was six days later, when she emailed them on October 26, 2014. May 3, 2016 Email at 5. The Investigation Report also shows that her first contact with Meyers, Wood and Becherer was on October 20, 2014, and Plaintiff expressly states in the proposed TAC that this first interaction occurred after she submitted the police report. Investigation Report at 3; TAC ¶ 39. Thus, any alleged omissions by these Defendants could not have reasonably

impacted Plaintiff's decision to go to the police.  *In re Parmalat Sec. Litig.*, 477 F. Supp. 2d 602, 611 n. 62 (S.D.N.Y. 2007) ("The reliance element of fraud is essentially causation in fact") (citing *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 278 (2d Cir. 1992)).  To the extent that she seeks to argue that these Defendants made false omissions prior to October 20, 2014, she has failed to plead any supporting facts, much less with particularity.

Plaintiff also cannot plausibly argue that she reasonably relied on any representation or omission that there was no other known misconduct by Nesbit against other women.  Indeed, she acknowledges that, before October 6, 2014, she personally observed "Nesbit physically touch other females on-campus without permission and ogle females, in a manner that would lead to a sexual harassment complaint had it occurred at work," and had thus "avoided Nesbit."  SAC ¶¶ 20, 81.  Courts in this district have held that "a plaintiff's actual knowledge of the allegedly misrepresented or omitted facts is fatal to his or her fraud claim."  *de Atucha v. Hunt*, 756 F. Supp. 829, 831 (S.D.N.Y. 1991) (citations omitted); *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 118 (S.D.N.Y. 2008) ("Where a plaintiff actually knew at the time a representation was made that it was false, she cannot claim to have relied on the truth of that representation").  Since Plaintiff concedes that she knew Nesbit acted improperly with other female students, she could not have reasonably relied on any representation or omission suggesting that he had not done so.[11]

Moreover, Plaintiff's allegations against Estrada, Graves-Poller and Schoenbrod are deficient because she fails to plead any facts concerning the alleged fraud.  To comply with Rule 9(b) pleading standards, plaintiffs must plead the fraudulent acts or omissions of *each* defendant

---

[11] Defendants also argue that Plaintiff has insufficiently pleaded knowledge and intention to induce reliance, but the Court need not reach these issues as it finds that the claims fail on other grounds.

with particularity. *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F.Supp.2d 282, 293 (S.D.N.Y. 2000). Plaintiff attributes no statements or actions to Estrada, Graves-Poller or Schoenbrod in furtherance of the purported fraudulent scheme in either the SAC or the proposed TAC. Plaintiff has therefore also failed to state a claim for fraud as to these Defendants.

Accordingly, the Court dismisses all of Plaintiff's fraud claims. The proposed TAC contains the same defects as the SAC. Plaintiff's motion to amend, seeking to bolster this claim and to bring new fraud claims against Eastus, Graves-Poller or Schoenbrod, is denied.

### 3. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress in New York, a plaintiff must allege: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *McGrath v. Dominican Coll. of Blauvelt, New York*, 672 F. Supp. 2d 477, 492 (S.D.N.Y. 2009); *see also Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). The standard for asserting a claim is "rigorous, and difficult to satisfy." *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 604 (S.D.N.Y. 2011) (quoting *Howell*, 612 N.E.2d at 702); *see also Conboy v. AT & T Corp.,* 84 F.Supp.2d 492, 507 (S.D.N.Y. 2000), *aff'd,* 241 F.3d 242 (2d Cir.2001) ("Satisfying the first element of this claim is difficult, even at the pleadings stage"). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."
*Howell*, 612 N.E.2d at 702.

Plaintiff has again failed to clear the high hurdle of asserting an intentional infliction of emotional distress claim against the Defendants. She avers that Defendants lied to her, failed to aid her when she reported staff misconduct, was hostile towards her, and conducted a "helplessly flawed" investigation. SAC ¶¶ 81-84. Despite the serious nature of these allegations, the Court cannot conclude that Defendants' treatment of Plaintiff approached the level of extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress under New York law. As the Investigation Report shows, the school promptly convened an Investigation Panel after Plaintiff made her complaint. Investigation Report at 1. The Panel conducted its investigation, credited Plaintiff's testimony, and punished Nesbit, establishing conditions on him that were meant to ensure that he would not come into contact with Plaintiff while she was at school. *Id.* at 4-5. These facts do not amount to intentional infliction of emotional distress. *See e.g. TC*, 777 F. Supp. 2d at 605 (delinquencies in how defendants addressed ongoing discrimination did not rise to the level of extreme or outrageous, and defamation generally cannot constitute extreme and outrageous behavior); *Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667, 671-74, 681-82 (S.D.N.Y. 1995) (intentional infliction of emotional distress claim dismissed where plaintiff suffered exclusion from firm activities, criticism, discrimination, and discriminatory comments, and received poor reviews); *Silverman v. New York Univ. School of Law,* 597 N.Y.S.2d 314, 315 (1st Dep't 1993) (destroying a student's exam motivated by personal animus toward the student not sufficient to state intentional infliction of emotional distress claim).

The proposed TAC also fails to add any allegations that constitute intentional infliction of emotional distress. The fact that Schoenbrod asked Plaintiff whether she was dyslexic, or the fact that Crowell directed her to the NYLS career center instead of helping her personally with legal employment, TAC ¶¶ 29, 51, do not show that Defendants engaged in extreme and outrageous conduct. Accordingly, Plaintiff's intentional infliction of emotional distress claim is dismissed with prejudice, and her motion to amend this claim is denied.

### 4. Section 1985(3) Claim Against All Defendants

To state a claim for conspiracy to commit a civil rights deprivation under Section 1985(3), a plaintiff must plausibly allege:

> (1) a conspiracy; (2) to deprive directly or indirectly any person of equal protection of the laws, or of equal privileges and immunities; and (3) an act in furtherance of the conspiracy; (4) whereby his person or property is injured or he is deprived of any right of a U.S. citizen.

*Roberts v. City of New York*, No. 14 Civ. 5198 (GHW), 2016 WL 4146135, at *8 (S.D.N.Y. Aug. 2, 2016). Furthermore, the conspiracy must also be motivated by "invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir. 1993).

Neither the supplemental allegations in the SAC or the proposed TAC support a plausible inference of a conspiracy between any of the Defendants. She claims that Defendants conspired to permit undue delay, to avoid addressing complaints of wrongdoing and retaliation by NYLS personnel, to conduct a flawed investigation, and to issue poor grades. SAC ¶ 89. However, she provides no facts suggesting any agreement or meeting of the minds. *Kalderon v. Finkelstein*, 495 Fed. Appx. 103, 108 (2d Cir. 2012) (plaintiff must plead "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (citation omitted); *see also Ochoa v. Bratton*, No. 16 Civ. 2852 (JGK), 2017

WL 5900552, at *9 (S.D.N.Y. Nov. 28, 2017) (dismissing a Section 1985(3) claim on a motion to dismiss where there are no facts that suggest an agreement or meeting of the minds among the defendants). She merely states in both the SAC and the proposed TAC that all of the alleged wrongs she experienced were due to "acts [that] were committed in furtherance of the conspiracy," and not due to coincidence or bad luck. SAC ¶¶ 37, 39, 89; *see also* TAC ¶ 33 (noting that Defendants "conspired to affect a bias in favor of males"). Such conclusory statements are insufficient to state a claim for conspiracy. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (claims of conspiracy "containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (citing *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)). Accordingly, the Court dismisses her Section 1985(3) claims with prejudice.

### 5. Title VI Claim Against NYLS

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim for a violation of the statute, a plaintiff must plausibly allege that (1) the defendant discriminated against her on the basis of race, color, or national origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's actions. *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).

In the SAC, Plaintiff supports her Title VI claim by alleging that NYLS's handling of complaints discriminates against women and has a disparate impact on women, and that she is more vulnerable to the disparate impact as an African American woman because "African-

Americans have less access to financial and other resources and are more prone to discrimination." SAC ¶ 90. The SAC is otherwise devoid of allegations concerning her race. Instead, she emphasizes that certain Defendants treated her differently from other male students because of her gender. *See* SAC ¶¶ 26, 58, 60, 82, 93.

As a threshold matter, the Court notes that gender is not a protected class under Title VI, and thus, any allegations that she was mistreated because she is a woman is irrelevant. Moreover, even after viewing these allegations in the light most favorable to Plaintiff, she states at most that NYLS's gender discrimination impacts her more severely because of her race. Title VI only targets intentional discrimination, and cannot be invoked to redress disparate-impact discrimination. *Joseph v. Metro. Museum of Art*, 684 F. App'x 16, 17 (2d Cir. 2017) (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005)). Thus, the SAC fails to state a Title VI claim.

The proposed TAC does not cure this defect as it also largely alleges that Plaintiff suffered discrimination due to her gender. TAC ¶¶ 29-35, 64, 66, 70. She only mentions race in conclusory allegations devoid of any specific facts suggesting that she was discriminated *because* of her race. In the proposed TAC, Plaintiff objects to NYLS's attitude "towards women who are not white" without further details. *Id.* ¶ 65. She also makes bald assertions that her white peers were protected from ridicule by Schoenbrod and Graves-Poller, and that white females received meaningful replies to grading inquiries. *Id.* ¶ 83.

Naked allegations that plaintiffs were treated differently from others outside of the protected class cannot demonstrate entitlement to Title VI relief. *Kajoshaj v. New York City Department of Education*, 543 F. App'x 11, 14 (2d Cir. 2013); *see also Sulehria v. New York*, No. 13 Civ. 6990 (AJN), 2014 WL 4716084, at *6 (S.D.N.Y. Sept. 19, 2014) (the fact that

individuals outside of the plaintiff's protected class were hired to the positions he sought does not establish intentional discrimination because there are no facts to show that he was passed over because of his race, color, or national origin); *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (dismissing a Title VI claim where the plaintiff does not "allege that any defendant referred to his race . . . nor does he recite any other fact from which race[]-based discriminatory intent reasonably could be inferred.").  Plaintiff must provide facts demonstrating either that NYLS personnel referred to her race, or that she was similarly situated in material ways to individuals outside of her race.  *Id.*; *Williams v. Pace Univ.*, 192 F. Supp. 3d 415, 422-23 (S.D.N.Y. 2016) (finding that plaintiff could not state a *prima facie* case of racial discrimination under Title VI because she did not plead facts showing that she was similarly situated to individuals outside of her protected class that were treated preferentially). She fails to do so.[12]  Accordingly, the Court dismisses Plaintiff's Title VI claim with prejudice and denies her motion to amend the SAC.

### B.　　Claims Unilaterally Amended by Plaintiff

#### 1.　Title IX Claims

In the March Order, the Court dismissed Plaintiff's Title IX claims against all of the individual Defendants, and her Title IX discrimination claim against NYLS with prejudice. March Order at 11-13, 22.  However, the SAC re-pleads the Title IX claims against individual Defendants and the Title IX discrimination claim against NYLS without prior consent from the Defendants or approval from this Court.  The Court previously dismissed these claims against all individual Defendants with prejudice because "the statute 'has consistently been interpreted as

---

[12] Indeed, she admits that Graves-Poller treated her differently from everyone else in the class, which included other African-American female students.  TAC ¶ 56; May 3, 2016 Email at 2.

not authorizing suit against school officials, teachers, and other individuals,' since they do not personally receive federal education funding." March Order at 12 (citations omitted). Therefore, no amount of additional pleading can salvage Plaintiff's Title IX claims against the individual Defendants.

Plaintiff's Title IX discrimination claim against NYLS, premised on Nesbit's harassment, cannot be resurrected either. As the Court previously noted, NYLS can only be held liable for student-on-student harassment if it was, *inter alia*, deliberately indifferent to the harassment, *i.e.*, if NYLS's actions were "clearly unreasonable." *Id.* at 12 (citations omitted). Like the FAC, the SAC alleges facts demonstrating that "NYLS did not act with deliberate indifference in response to Nesbit's harassment of female students." *Id.* at 13; *see* Investigation Report. Although Plaintiff challenges the adequacy of the investigation and resulting disciplinary measures, the Investigation Report demonstrates that the investigation was not clearly unreasonable and that NYLS imposed severe sanctions on Nesbit. Investigation Report at 4-5. Accordingly, Plaintiff's Title IX discrimination claim against NYLS is dismissed again with prejudice. However, since Defendants do not seek to dismiss Plaintiff's Title IX retaliation claim against NYLS, she may still proceed on that claim.

### 2. GBL Section 349 Claim against NYLS

In the March Order, the Court allowed Plaintiff to proceed on her GBL Section 349 claim against NYLS based on the allegedly misleading advertisements and marketing by NYLS to induce minorities to attend NYLS. March Order at 16-17, 22. Nevertheless, in the SAC, Plaintiff amended her pleadings concerning this claim. Defendants argue that her "recast" allegations in the SAC now fail to maintain a GBL Section 349 claim. The Court disagrees.

As the Court previously noted in its March Order, GBL § 349 prohibits "[d]eceptive acts

or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). In order to succeed on her GBL § 349 claim, Plaintiff must ultimately prove that (1) Defendants engaged in an act or practice that is deceptive or misleading in a material way; (2) she was injured by reason thereof; and (3) the deceptive act or practice is "consumer oriented." *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603-04 (N.Y. 1999). A "deceptive act or practice" is a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 604 (quoting *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 668 (N.Y. 1999)).

In the SAC, Plaintiff supplements her prior allegations by listing many of the specific representations NYLS made in order to create the perception that NYLS was committed to diversity and prohibited discrimination. SAC ¶¶ 42-46. Defendants argue that because she failed to explicitly state that any of the specific representations are false, her GBL Section 349 claim cannot survive. However, viewing Plaintiff's pleadings in the light most favorable to her, Plaintiff sufficiently suggests that NYLS's specific marketing representations were false, and that NYLS made false assurances that gender-based harassment and discrimination would not be tolerated and that its anti-discrimination policies would be adequately enforced. *Id.* ¶¶ 52-54. Regardless of whether or not she can ultimately prove this claim, she should be given the opportunity to conduct discovery. For substantially the same reasons as in the March Order, the Court allows Plaintiff's GBL Section 349 claim to proceed.

### 3. NYHRL against All Defendants

Plaintiff seeks to add a NYHRL claim, which is intended to "eliminate and prevent discrimination" in, *inter alia*, educational institutions. N.Y. Exec. Law § 290(3). Plaintiff does not specify which of NYHRL's specific provisions were violated. However, her NYHRL

allegations are identical to her Title IX allegations. Thus, the Court assumes that the SAC purports to state a claim under NYHRL Sections 296(4), 296(6) and 296(7). Section 296(4) prohibits "an education corporation or association which holds itself out to the public . . . to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, . . . [or] sex." N.Y. Exec. Law § 296(4). Section 296(6) further makes it unlawful for individuals to "aid, abet, incite, compel or coerce" violations of Section 296. N.Y. Exec. Law § 296(6). Section 296(7) prohibits "retaliat[ion] or discriminat[ion] against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(7).

The Second Circuit has held that NYHRL claims are evaluated under the same standard as analogous claims under Title IX. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000); *see also T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11 Civ. 5133 (VB), 2012 WL 860367, at *9 (S.D.N.Y. Feb. 27, 2012) (finding that plaintiff adequately pleaded a claim for retaliation under NYHRL because the Court has found that plaintiff stated a claim for Title IX retaliation); *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 400 (E.D.N.Y. 2005) ("NYHRL discrimination claims are evaluated using the same *analytic framework* as federal discrimination actions.") (emphasis in original).

Accordingly, for the same reasons as stated in examining Plaintiff's Title IX claims in the March Order, the Court finds that Plaintiff adequately pleaded a retaliation claim against NYLS under Section 296(7), but has not adequately pleaded a discrimination claim against NYLS under Section 296(4).

Moreover, Plaintiff alleges that Crowell and Estrada improperly retaliated against her by

failing to assist her law school transfer and that Graves-Poller and Schoenbrod retaliated against her by awarding her low grades. SAC ¶¶ 32-41; TAC ¶¶ 43-59. Taking her pleadings as true and construing them liberally, the Court finds that these facts sufficiently support the claim that Crowell, Estrada, Graves-Poller and Schoenbrod violated Section 296(6) by improperly aiding and abetting NYLS's retaliation. However, Plaintiff does not plead any facts showing that Archer, Meyers, Becherer, Wood, Hope or Eastus retaliated against her. Therefore, the Court allows Plaintiff to amend the SAC to the extent that it adds NYHRL claims against NYLS, Crowell, Estrada, Graves-Poller and Schoenbrod.

## IV. CONCLUSION

For the aforementioned reasons, the Plaintiff's motion to amend is GRANTED in part and DENIED in part, and Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the following claims remain: (1) Title IX retaliation claim against NYLS; (2) GBL Section 349 claim against NYLS; and (3) NYHRL claims against NYLS, Crowell, Estrada, Graves-Poller and Schoenbrod. The following claims are dismissed with prejudice: (1) Title IX claims against individual Defendants; (2) Title IX discrimination claim against NYLS; (3) breach of contract claim against NYLS; (4) fraud claims against all Defendants; (5) intentional infliction of emotional distress claims against all Defendants; (5) Section 1985(3) claims against all Defendants; (6) Title IV claim against NYLS; and (7) NYHRL claims against Archer, Meyers, Becherer, Wood, Hope and Eastus.

The parties are directed to appear for a status conference on **Wednesday, January 10, 2018 at 12:30 p.m.**  The Clerk of the Court is respectfully directed to terminate the motions, Docs. 49 and 52.

It is SO ORDERED.

Dated:     December 27, 2017
           New York, New York

Edgardo Ramos, U.S.D.J.