UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THERESA BAILEY,

                Plaintiff,

– against –

NEW YORK LAW SCHOOL, ANTHONY CROWELL, DAVID SCHOENBROD, ELLA MAE ESTRADA, and BARBARA GRAVES-POLLER,

                Defendants.

**OPINION AND ORDER**

16 Civ. 4283 (ER)

Ramos, D.J.:

*Pro se* plaintiff Theresa Bailey ("Bailey") brings this action against New York Law School ("NYLS"), Anthony Crowell, David Schoenbrod, Ella Mae Estrada, and Barbara Graves-Poller (collectively, "Defendants"). Bailey alleges that NYLS engaged in allegedly misleading advertisements and marketing to induce minorities to attend NYLS and that Defendants retaliated against her for reporting a sexual harassment incident. Pending before this Court is Defendants' motion for summary judgment with respect to Bailey's Title IX and NYHRL retaliation claims against Defendants and New York General Business Law ("GBL") § 349 claim against NYLS pursuant to Federal Rule of Civil Procedure Rule 56.

For the following reasons, Defendants' motion for summary judgment is GRANTED.

## I.    FACTUAL BACKGROUND[1]

The Court presumes familiarity with the facts of this case, which are detailed in the

---

[1] The following facts are drawn in the light most favorable to the non-moving party, Bailey, from the Second Amended Complaint ("SAC") (Doc. 32), the Third Amended Complaint ("TAC") (Doc. 69), Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s Stmt.") (Doc. 106), Bailey's Rule 56.1 Statement in Opposition

March 1, 2017 order ("March Order") and the December 27, 2017 order ("December Order"). Doc. 24, 58. It discusses here only those facts necessary for the disposition of the instant motion. The following facts are undisputed except where otherwise noted. Bailey is a 32-year-old woman of color who attended NYLS as an evening student from August 2012 until her graduation in May 2016. TAC ¶¶ 1-2. NYLS is a private law school located in New York, New York and a recipient of Title IX funds. *Id.* ¶ 7. The individual defendants are all affiliated with the School: Anthony Crowell is the School's Dean; Ella Mae Estrada was the Assistant Dean of Admissions and Financial Aid at all relevant times; both David Schoenbrod and Barbara Graves-Poller are law professors at NYLS. *Id.* ¶ 8; Def.'s Stmt ¶ 15.

### a. The October 6, 2014 Incident[2]

Bailey's suit revolves around an incident that occurred on the campus of NYLS on October 6, 2014. That evening, Bailey encountered Stephen Nesbit, a white male student outside of the 3rd floor campus women's restroom. TAC Ex. B at 2. Nesbit allegedly trapped Bailey so that she could not pass, pushing her into a wall and sliding his body across hers. *Id.* Bailey was able to free herself, and when she turned to confront her attacker, she realized his pants were down and his butt and thighs were exposed. *Id.* According to Bailey, "His eyes were red and glazed over, he was drooling, his chest was rising and falling, he was clenching and unclenching his fists, and his shoulders were rounded in an aggressive posture." *Id.*

On October 7, 2014, Bailey reported the incident to NYLS. TAC Ex. A at 2. Three days later, on October 10, 2014, non-party Howard Meyers, the Chair of the Harassment and

---

("Pl.'s Stmt.") (Doc. 109), Defendant's Reply 56.1 Statement ("Def's Reply") (Doc. 110) and the parties' supporting submissions. Any citation to the parties' 56.1 Statements incorporates by reference the documents cited therein.

[2] Bailey, in her 56.1 statement, disputes Defendants' characterization of the incident and NYLS's investigation afterwards. Pl.'s Stmt ¶¶ 9-10. In response, Defendants point to the investigation report that is attached as Exhibit B to TAC. Def.'s Reply ¶¶ 9-10.

Discrimination Review Board at NYLS, convened an Investigation Panel consisting of non-party Jeffery Becherer, Assistant Dean for Career Planning, and non-party Erika Wood, Associate Professor of Law, to investigate the incident. TAC Ex. B at 1. After reviewing evidence, interviewing witnesses including Bailey, and speaking with School administrators, the Board imposed a number of sanctions against Nesbit targeted to limit his presence on campus, particularly at times when Bailey would also be there. *Id*. at 3-5. As adopted by NYLS, the Investigation Report concluded that Nesbit violated Section I.B.2 of the Non-Discrimination and Harassment Policy, which prohibits "subjecting an individual to humiliating, offensive, abusive or threatening conduct that creates intimidating, hostile or abusive work, residential or academic environment, . . . or unreasonably interferes with an individual's academic . . . performance *on the basis of the individual's Protected Classification*." *Id*. at 1 (emphasis added). It also issued a number of sanctions against Nesbit, including: (1) prohibiting him from appearing on campus until January 11, 2015, and restricting his presence on campus thereafter to only his classes and co-curricular activities; (2) placing him on probation through his graduation at NYLS, meaning that any further Non-Discrimination and Harassment Policy violation would result in his immediate expulsion; (3) permitting him to enroll only in classes that met between 9:00 a.m. and 5:40 p.m., presumably because Bailey was a night student, thereby minimizing the likelihood that the two would come into contact; (4) preventing him from enrolling in any classes in which Bailey was enrolled; (5) requiring him to obtain approval of his schedule from the Assistant Dean for Academic Affairs; and (6) requiring him to attend a harassment training program. *Id*. Furthermore, following his graduation from NYLS, Nesbit would be permitted to appear on campus only to attend a bar review course, and upon completing the bar examination in July 2015, Nesbit would be prohibited from appearing on campus until Bailey graduated and

completed her bar examination. *Id*. Evidently dissatisfied with the outcome, Bailey later appealed the sanctions and moved for a hearing. Pl.'s Stmt ¶ 12. A hearing was later held before a neutral chairperson with no ties to NYLS or any other party. *Id*. Ever since the imposition of the sanctions, Nesbit has neither spoken nor made any physical contact with Bailey. *Id*. ¶ 13. In addition to the investigation and the hearing, NYLS also offered to tape Bailey's courses, to have a security guard escort Bailey to classes, to instruct Nesbit not to go on Bailey's preferred floor of the library, added security patrols in the evening when Bailey is on campus and postponed Bailey's constitutional law final exam. *Id*. ¶ 14. Bailey does not dispute that NYLS offered and made these accommodations, but only argues that she did not request them and never wanted to be in that position. *Id*.

    **b. Bailey's Attempt to Transfer**

In light of the way NYLS handled the incident, Bailey decided to transfer to another law school. *Id*. ¶ 15. In April 2015, she wrote to Defendant Crowell, as well as several professors at the School, seeking assistance. TAC ¶ 29. Bailey also met with Crowell in June 2015, along with Ella Mae Estrada from the Admissions Office who was supposed to aid her transfer. *Id*. ¶ 30. At all relevant times, Estrada's position focused on the admission of new students and she had no prior experience providing transfer assistance. Def.'s Stmt ¶ 15; Doc. 105 ("Volpe's Decl.") Ex. 8 ("Estrada's Decl.") at 1. Later that day, Estrada met alone with Bailey and suggested that a spreadsheet tracking the soon approaching deadlines of her target law schools would be helpful. Estrada's Decl. at 2. Estrada subsequently prepared the spreadsheet and emailed it to Bailey on June 5, 2015. *Id*.; Volpe's Decl. Ex. 9[3]. In the email, Estrada indicated

---

[3] The Transfer Spreadsheet contains the relevant application deadlines of 16 law schools, their application fees and maximum number of units and whether they require full or part time attendance.

4

that she would review Bailey's personal statement over the weekend. *Id*. In their second meeting, Estrada went through Bailey's personal statement with her and made suggestions. Def.'s Stmt ¶ 17; Pl.'s Stmt ¶ 17; Pl.'s Stmt Ex. 3 ("Bailey's Dep.") at 170-71. Defendants assert that there was also a third meeting where Bailey indicated everything was fine. Def.'s Stmt 17. Bailey disputes that there were three meetings and denies that she ever indicated her well-being. Pl.'s Stmt ¶ 17.

In connection with her transfer process, Bailey also requested letters of recommendations from two NYLS professors, Professor Jeffery Haas and Professor Robert Blecker. TAC Ex. F at 5-6; Def.'s Stmt ¶ 19. Bailey received only one letter of recommendation from Professor Haas. Pl.'s Stmt ¶ 19; Def.'s Reply ¶ 19. Bailey ultimately did not transfer from NYLS.

### c. Bailey's Fall 2015 Semester

Unable to transfer to another school, Bailey returned to NYLS for the fall 2015 semester. Pl.'s Stmt ¶ 20; Def.'s Stmt ¶ 20. That semester, Bailey received the worst grades of her law school career, including a D+ and an F.[4] TAC ¶¶ 33-37. Before October 2014, Bailey had also received a D + and C- in her Spring 2013 semester at NYLS, a C- in the subsequent Fall 2013 semester, and seven additional C grades from the School. Pl.'s Stmt ¶ 8; Def.'s Stmt ¶ 8. Bailey received the D + in Professor David Schoenbrod's Remedies class of 17 students based on an anonymously graded exam. Pl.'s Stmt ¶¶ 22-25; Def.'s Stmt ¶¶ 22-25. Prior to the semester, Schoenbrod had participated in NYLS's March 26, 2015 rehearing process concerning the October 6, 2014 Incident, which Bailey was aware of. *Id*. ¶ 20; TAC Ex. C at 1. During the semester, Schoenbrod inquired on one occasion after a class ended as to whether Bailey might

---

[4] In her deposition, Bailey stated that she received the F grade from a "Professor Filler" at NYLS and has no knowledge whether the F was retaliatory. Bailey's Dep. at 120-21. Bailey assert no claims against a "Professor Filler" in her pleadings and has made no allegation relating to Professor Filler other than the fact that she received the F grade. TAC ¶¶ 33-37.

also be dyslexic. Def.'s Reply ¶ 21. Bailey does not dispute that she was aware of the fact that Schoenbrod himself suffers from dyslexia, is forthcoming about it and had helped other students with dyslexia, but nevertheless argues that the inquiry is retaliatory. Pl.'s Stmt ¶ 21.

Defendants assert that the exam at issue was anonymously graded as NYLS students use only anonymous numerical identifiers on their responses on all exams. *Id*. ¶¶ 22-25. Bailey does not dispute that she used an anonymous numerical identifier and did not put her name down on the exam, but nevertheless disputes that the exam was truly anonymously graded on the basis that her grade was "arbitrarily" increased from a D initially to a D + by Schoenbrod after learning of Bailey's identity. Pl.'s Stmt ¶ 22; Bailey's Dep. at 115.

### d. Bailey's Spring 2016 Semester

In her last semester at NYLS, Bailey enrolled in Professor Barbara Graves-Poller's Family Law course. Pl.'s Stmt ¶ 26; Def.'s Stmt ¶ 26. Bailey only participated in five or six classes before obtaining NYLS's permission to transfer to a pass/fail course that she ultimately passed. Pl.'s Stmt ¶¶ 27, 29; Def.'s Stmt ¶¶ 27, 29.

Defendants assert that Bailey actively sought out Graves-Poller's class because Graves-Poller likely had no knowledge of the October 6, 2014 incident and Bailey never told Graves-Poller about the incident during the semester. Def.'s Stmt ¶ 26. Bailey disputes that she sought out Graves-Poller's class and that Graves-Poller had no prior knowledge of the incident. Pl.'s Stmt ¶ 26. Defendants assert that Graves-Poller had called on Bailey some times when she volunteered to participate and had solicited responses from other students who did not volunteer in order to procure even class participation by students and to improve diversity in class conversations. Def.'s Stmt ¶ 28. Bailey admits that Graves-Poller had called on her several times and only disputes Graves-Poller's motivation behind her way of calling on students. Pl.'s

6

Stmt ¶ 28. Bailey also alleges that Graves-Poller failed to provide her with the necessary nameplate for attendance purposes and consistently marked her absent despite her presence for all the classes, which would have caused her to fail the course. TAC ¶ 39.

### e. Marketing by NYLS

According to Bailey, NYLS publicized that it admitted more women than men between 2011 and 2014; filed five amicus briefs concerning discrimination against minority groups between 2012 and 2016; published a "Campus Safety Report" showing a lack of any serious misconduct on campus during the 2012 reporting period; lauded minority female students on its website; promoted social justice events that highlighted staff participation; partnered with the Courtroom Advocates Project, which assists victims of domestic violence through courtroom advocacy. SAC ¶¶ 42-46. NYLS also purportedly gave assurances that gender-based harassment and discrimination would not be tolerated and would be adequately adjudicated by NYLS. *Id.* ¶¶ 46, 52-53.

Contrary to the information contained in those marketing materials, however, Bailey asserts four instances of discrimination during her time at NYLS: a black female student reported a classmate for racist remarks; a black female complained about a professor's behavior towards her;[5] a Hispanic female student's books were stolen; and other female students previously reported Nesbit and he was kicked out of class by a female professor. SAC ¶ 48. In addition, Bailey alleges that she asked Crowell for help in finding employment, and was merely advised to contact Crowell's assistant and to consult the NYLS career center. TAC ¶ 29. Bailey claims that her treatment differed from the way Crowell allegedly treated two other male students. *Id.* ¶¶ 18, 20.

---

[5] Plaintiff does not further explain the content of this complaint.

7

## II. PROCEDURAL BACKGROUND

On July 5, 2016, Bailey filed the first Amended Complaint against the defendants named in the original complaint: NYLS, Anthony Crowell, Deborah Archer, Howard Meyers, Jeffery Becherer, and Erika Wood. Doc. 17. As construed by this Court in the March Order, she asserted the following causes of action: (1) violation of Section 1983, (2) discrimination and retaliation under Title IX of the Education Amendments of 1972, (3) violation of New York GBL § 349, (4) breach of contract, (5) fraud, and (6) intentional infliction of emotional distress. *See* March Order at 9-22.

In the March Order, the Court permitted Bailey to proceed on her Title IX retaliation and GBL § 349 claims against NYLS, granted leave to re-plead her breach of contract and Title VI claims against NYLS, and granted leave to re-plead her fraud, intentional infliction of emotional distress, and Section 1985(3) claims against all defendants. *Id.* at 22. The Court denied all remaining claims with prejudice, including her Title IX claims against individual defendants, Title IX discrimination claim against NYLS, Section 1983 claims, and First Amendment claim. *Id.*

On March 21, 2017, Bailey requested leave to add Oral Hope and Victoria Eastus as defendants in her proposed SAC, which the Court granted on March 22, 2017. Doc. 29-31. On March 29, 2017, Bailey filed the SAC. Doc. 32. Without receiving prior consent from Defendants or approval from this Court, however, she also (1) named three additional individual defendants (Ella Mae Estrada, David Schoenbrod, and Barbara Graves-Poller); (2) asserted for the first time NYHRL claims; and (3) re-alleged the Title IX claims against individual Defendants and the Title IX discrimination claim against NYLS, which were previously dismissed with prejudice in the March Order. *Id.* Specifically, the SAC asserted the following

causes of actions: (1) violation of Title IX against all Defendants, (2) violation of NYHRL against all Defendants, (3) violation of GBL § 349 against NYLS, (4) breach of contract against NYLS, (5) fraud against all Defendants, (6) intentional infliction of emotional distress against all Defendants, (7) violation of Section 1985(3) against all Defendants, and (8) violation of Title VI against all Defendants. *Id.*

In the December Order, the Court permitted Bailey to amend her SAC to add NYHRL claims against NYLS, Crowell, Estrada, Graves-Poller and Schoenbrod. *See* December Order at 33. The Court then dismissed all of Bailey's claims with prejudice except: (1) Title IX retaliation claim against NYLS; (2) GBL § 349 claim against NYLS; and (3) NYHRL claims against NYLS, Crowell, Estrada, Graves-Poller and Schoenbrod. *Id.*

On January 16, 2018, the Court entered an order assigning this case to Magistrate Judge James L. Cott. Doc. 60. On February 13, 2018, Bailey filed the TAC. Doc. 69. On July 11, 2018, the parties appeared before Judge Cott for a conference, during which Judge Cott directed the parties to complete their document production by August 1, 2018 and warned them that they could not rely on documents not produced by them by the deadline. Doc. 84. On August 24, 2018, Defendants informed Judge Cott that Bailey stated in her cover letter attached to the documents she produced on August 1, 2018, that a complete record of evidence she relies on would be made available to Defendants by October 1, 2018. Doc. 90 at 1. On September 4, 2018, Defendants took Bailey's deposition. Doc. 90 at 2. Defendants then moved to preclude Bailey from relying upon documents she failed to provide by her deposition. *Id.* Judge Cott granted that motion. Doc. 93.

On September 19, 2018, Bailey informed the Court that she intended to file an objection to Judge Cott's Order, but could not do so because she was sick. Doc. 94. The Court granted her

9

an extension of time to object to Judge Cott's order to December 7, 2018. Doc. 97. Bailey filed her objection on December 7, 2018. Doc. 98. On January 9, 2019, the Court overruled Bailey's objection and affirmed Judge Cott's order in its entirety. Doc. 102.

Subsequently, Defendants filed their motion for summary judgment along with their memorandum of law ("Def.'s Mem.") (Doc. 104), Rule 56.1 statement (Doc. 106) and a sworn declaration by Defendants' counsel Michael J. Volpe (Doc. 105) in support thereof on January 18, 2019. Doc. 103. On February 20, 2019, Bailey filed her Rule 56.1 statement in opposition. Doc. 109. Defendants then filed their reply Rule 56.1 statement and memorandum of law ("Def.'s Reply Mem.") on March 7, 2019. Doc. 110, 111. As such, Defendants' motion to summary judgment has been fully briefed.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F.

Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### B. *Pro Se* Plaintiff

The Court holds submissions by *pro* se litigants to "less stringent standards than formal pleadings drafted by lawyers," *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)), and is obligated to liberally construe their pleadings "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citations omitted). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Nor does Rule 56 "'impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute,'" even where the non-moving party is *pro se*. *Charles v. City of New York*, No. 07 CIV. 2782 (RJS) (GWG), 2011

WL 2936428, at *5 (S.D.N.Y. July 22, 2011) (quoting *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)).

IV. **DISCUSSION**

Preliminarily, the Court notes that Defendants rely primarily on *Avillan v. Donahoe*, No. 13 Civ. 509 (PAE), 2015 WL 728169, at *6 (S.D.N.Y. Feb. 19, 2015) to contend that Bailey's failure to submit a memorandum of law in compliance with Local Civil Rule 7.1[6] of this district alone warrants granting Defendants' motion for summary judgment. *See* Def.'s Reply Mem. at 1-2. Alternatively, Defendants contend that Bailey's failure to bolster her Rule 56.1 statement with any admissible evidence also warrants dismissal. However, unlike the plaintiff in *Avillan*, Bailey is proceeding *pro se* in this action. When a *pro se* litigant is present, the same standards for summary judgment operate, but the *pro se* litigant is afforded "special latitude" in opposing a summary judgment motion. *Knowles v. N.Y. City Dep't of Corr.*, 904 F.Supp.217, 220 (S.D.N.Y. 1995); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (Same). A district court has broad discretion to decide whether to overlook a party's failure to comply with local rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). Therefore, given Bailey's *pro se* status, the Court will exercise its broad discretion to overlook this defect and conduct a review of the record and both parties' submissions in connection with the instant motion to reach its decision.

A. **Bailey's Retaliation Claims**

"[R]etaliation against individuals because they complain of sex discrimination is 'intentional discrimination that violates the clear terms of [Title IX].'" *Jackson v. Birmingham*

---

[6] Under Local Civil Rule 7.1, all motions and oppositions thereto shall include, *inter alia*, "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion." *Id*.

12

*Bd. Of Educ.*, 544 U.S. 167, 183, 125 S.Ct. 1497, 161 L. Ed..2d 361 (2005) (quoting *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. at 642). To establish a retaliation claim under Title IX, a plaintiff must first establish a *prima facie* case by showing: (1) plaintiff engaged in protected activity; (2) defendant's knowledge of the protected activity; (3) adverse school-related action; (4) the protected activity and the adverse action are causally related. *Papelino v. Albany Coll. Of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (citation omitted). At the summary judgment stage, if a plaintiff produces the minimally required evidence to support the elements of the retaliation claim, the burden of production then goes to the defendant to provide a "legitimate, nondiscriminatory reason" for its actions. *Id*. at 92 (explaining that burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to Title IX retaliation claims); *see also Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). If the defendant satisfies its burden, then the burden goes back to the plaintiff to show that that purported reason is "pretextual". *Papelino*, 633 F.3d at 92.

To establish a *prima facie* case of retaliation, a plaintiff must show that a reasonable person would have deemed the defendant's action "materially adverse," which means that it could have discouraged a reasonable person from making a complaint. *Williams v. Columbia Univ.*, No. 11 Civ. 8621 (WHP), 2012 WL 3879895, at *3 (S.D.N.Y. Aug. 28, 2012) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)); *see also Papelino*, 633 F.3d at 91. The anti-retaliation law safeguards an individual not from all retaliation, but from retaliation that results in an injury or harm. *See Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. 2405). Further, while a causal connection can be inferred from a close temporal gap between the protected activity and the adverse action, courts

in this Circuit have found a temporal gap of three to five months alone insufficient to permit such inference. *Shalom v. Hunter Coll.*, 645 Fed. App'x. 60, 63 (2d Cir. 2016) (concluding that a five-month lapse between the protected activity and the adverse action required more to establish a causal connection); *see also Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (concluding the same for a three-month gap). Defendants contend that there is simply no evidence in the record that Defendants took any materially adverse action against Bailey. Def.'s Reply Mem. at 3-8. The Court agrees.

First, Bailey has not established that the transfer assistance that she received was retaliatory. It is indisputable that Estrada met with Bailey on at least two occasions. During those occasions, Estrada provided her with a spreadsheet tracking the application deadlines for her target schools and reviewed and made suggestions regarding Bailey's personal statement. While Estrada admittedly lacks experience in providing transfer assistance, Bailey does not allege that any individual at NYLS either has more experience in providing such assistance or has received more transfer assistance that she did. Furthermore, Bailey admits that that Professor Blecker's refusal to write a letter of recommendation was neither "discriminatory [n]or retaliatory." TAC Ex. F at 6. In Bailey's own words, Professor Blecker politely refused to write a letter of recommendation for Bailey because he was also Bailey's advisor during the previous investigation of the October 6, 2014 Incident. *Id.*

Second, Bailey fails to show that Schoenbrod took any retaliatory action. It is indisputable that Schoenbrod increased Bailey's grade from a D- to a D + after learning her identity. Def.'s Stmt ¶ 22; Pl.'s Stmt 22. Bailey's unsworn and unsupported argument that this fact alone contradicts Defendants' assertion that exam was graded anonymously is simply meritless, especially given her sworn testimony that she used an anonymous identifier and did

14

not put down her name on the exam. *Id*.; Bailey's Dep. at 115. Bailey's assertion that Schoenbrod's single inquiry regarding dyslexia is retaliatory is unavailing in light of her admission that she was aware of Schoenbrod's own dyslexia and his efforts to help similarly affected students. Pl.'s Stmt ¶ 21. In any event, Bailey evidently does not dispute Defendants' legitimate, non-retaliatory reason that Bailey performed poorly on the exam by answering half of the multiple-choice questions incorrectly and providing incomplete answers to the essay questions. *Id*. ¶ 22.

Bailey's claims relating to Graves-Poller are similarly unavailing. Bailey only enrolled in Graves-Poller's class well over a year after her protected activity. Additionally, the record contains no evidence to show that Graves-Poller's alleged treatment of Bailey had any adverse or negative effect on Bailey. In fact, NYLS granted her special permission to transfer to another class that she passed and that Bailey's transcript contains no record of Graves-Poller's class or Bailey's grade in that class. Def.'s Stmt ¶ 29; Pl.'s Stmt ¶ 29.

Therefore, Bailey has failed to show that Defendants took any retaliatory action against her. Accordingly, the Court grants Defendants' motion for summary judgment on Bailey's Title IX retaliation claim.

The Second Circuit has held that NYHRL claims are evaluated under the same standard as analogous claims under Title IX. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000); *see also T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11 Civ. 5133 (VB), 2012 WL 860367, at *9 (S.D.N.Y. Feb. 27, 2012) (finding that plaintiff adequately pleaded a claim for retaliation under NYHRL because the Court has found that plaintiff stated a claim for Title IX retaliation). As a result of the December Order, Bailey's only remaining NYHRL claims are a retaliation claim under NYHRL Section 296(7) against NYLS and that the

individual Defendants improperly aided and abetted NYLS's retaliation in violation of NYHRL Section 296(6). *See* December Order at 32-33. Accordingly, for the same reasons as stated above, the Court grants Defendants' motion for summary judgment on Bailey's NYHRL claims.

      **B.**      **Bailey's GBL § 349 Claim**

As the Court previously noted in its March Order, GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). In order to state a prima facie case under GBL § 349, a plaintiff must show that (1) Defendants engaged in an act or practice that is deceptive or misleading in a material way; (2) she was injured by reason thereof; and (3) the deceptive act or practice is "consumer oriented." *Hutter v. Countrywide Bank, N.A.*, No. 09 Civ. 10092 (NSR), 2015 Wl 5439086 at *6 (S.D.N.Y. Sept. 14, 2015) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (internal citations omitted)). A "deceptive act or practice" is a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999) (quoting *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 668 (N.Y. 1999)). Defendants contend that Bailey's GBL § 349 claim must fail because she has not offered any admissible evidence, except her own unsupported assertions, that identify a single publication by NYLS with any reasonable detail, much less to show that they are misleading in any way. The Court agrees.

Here, Bailey fails to provide any evidence to establish a deceptive act or practice. Bailey asserts that NYLS's representations in its website, admission statistics, amicus briefs, Campus Security Reports, and its promotional materials relating to social justice events are misleading. SAC ¶ 42-46. However, the Court notes, based on a review of the entire record, that Bailey has not produced a single document that reasonably identifies any of the allegedly misleading

16

publications by NYLS. Bailey also failed to identify them at her deposition with any level of detail. *See* Bailey's Dep. at 183-88. On the other hand, Defendants have produced sworn declarations by Estrada and non-party Victoria Eastus, a current NYLS law professor and former director of academic affairs, that NYLS accurately reports its admission statistics and its crime statistics. Estrada's Decl.; Volpe's Decl. Ex. 5. Additionally, Defendants have attached relevant excerpts from NYLS's campus security reports for the 2010-2011 and 2012-2013 reporting cycles that contain several reports of stolen books. Volpe's Decl. Ex. 14. As Judge Cott ordered and this Court affirmed, Bailey is precluded from producing any additional evidence that she intends to rely on. Doc. 93. As such, the Court is left with Bailey's unsupported and unsworn assertions in her pleadings and cannot properly review her GBL §349 claim against Defendants' motion for summary judgment well-supported by evidence. Accordingly, the Court grants Defendants' motion for summary judgment on Bailey's GBL §349 claim. *See e.g., Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014); *see also Hutter v. Countrywide Bank*, N.A., 710 F. App'x. 25, 27 (2d Cir. 2018).

## V. CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 103, and close the case.

It is SO ORDERED.

Dated: September 24, 2019
       New York, New York

Edgardo Ramos, U.S.D.J.

17